77 Cal.Rptr.2d 445 (1998)
959 P.2d 752
18 Cal.4th 1143
CITY OF MOORPARK et al., Petitioners,
v.
The SUPERIOR COURT of Ventura County, Respondent;
Theresa L. Dillon, Real Party in Interest.
No. S057121.
Supreme Court of California.
August 17, 1998.
*447 Cheryl J. Kane, City Attorney, Burke, Williams & Sorensen, Harold A. Bridges and Heather C. Beatty, Los Angeles, for Petitioners.
Fred L. Main, Sacramento, Dale R. Kuykendall, Modesto, O'Melveny & Myers, Stephen P. Pepe, Steven M. Cooper, Kevin M. Wernick, Los Angeles, Armstrong & North, San Jose, and William J. Armstrong, San Francisco, as Amici Curiae on behalf of Petitioners.
No appearance for Respondent.
Maury Mills, Jr., Ventura, for Real Party in Interest.
Brad Seligman, Elaine Feingold, Berkeley, Christopher Ho, San Francisco, Joseph Posner, Encino, Joseph R. Grodin, San Francisco, Paul R. Gant, Sacramento, William A. Herreras, Grover Beach, Quackenbush & Quaekenbush and William C. Quackenbush, San Mateo, as Amici Curiae on behalf of Real Party in Interest.
Steven C. Owyang and Ann M. Noel, San Francisco, as Amici Curiae.
CHIN, Justice.
Labor Code section 132a (section 132a) prohibits employers from discriminating against employees "who are injured in the course and scope of their employment." When an injury of this kind results in disability, we have held that section 132a prohibits discrimination based on the disability. (Judson Steel Corp. v. Workers' Comp. Appeals Bd. (1978) 22 Cal.3d 658, 667, 150 Cal.Rptr. 250, 586 P.2d 564 (Judson Steel).) In addition, the California Fair Employment and Housing Act (Gov.Code, § 12900 et seq. (FEHA)) prohibits various types of employment discrimination, including discrimination based on a disability. (Gov.Code, § 12921.) Finally, we have recognized a common law protection against certain types of discriminatory or retaliatory termination of employment. (Stevenson v. Superior Court (1997) 16 Cal.4th 880, 897, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (Stevenson) [age discrimination]; Gantt v. Sentry Insurance (1992) 1 Cal.4th 1083, 1097, 4 Cal.Rptr.2d 874, 824 P.2d 680 (Gantt) [retaliation for testifying truthfully]; Rojo v. Kliger (1990) 52 Cal.3d 65, 90-91, 276 Cal.Rptr. 130, 801 P.2d 373 (Rojo) [sex discrimination]; Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 178, 164 Cal. Rptr. 839, 610 P.2d 1330 (Tameny) [retaliation for refusal to participate in an illegal price-fixing scheme].) This common law remedy for wrongful discharge arguably extends to disability discrimination, though we have not addressed the issue.
Several Court of Appeal decisions have held that section 132a provides the exclusive remedy for discrimination based on a work-related disability, precluding FEHA or common law wrongful discharge claims. (See, e.g., Adkins v. State of California (1996) 50 Cal.App.4th 1802, 1822, 59 Cal.Rptr.2d 59; Langridge v. Oakland Unified School Dist. (1994) 25 Cal.App.4th 664, 670, 31 Cal. Rptr.2d 34; Angell v. Peterson Tractor, Inc. (1994) 21 Cal.App.4th 981, 996-997, 26 Cal. Rptr.2d 541 (Angell); Usher v. American Airlines, Inc. (1993) 20 Cal.App.4th 1520, 1526-1527, 25 Cal.Rptr.2d 335; Denney v. Universal City Studios, Inc. (1992) 10 Cal. App.4th 1226, 1235, 13 Cal.Rptr.2d 170; Fortner v. Safeway Stores, Inc. (1991) 229 Cal.App.3d 542, 547, 551, 280 Cal.Rptr. 409; Pickrel v. General Telephone Co. (1988) 205 Cal.App.3d 1058, 1064, 252 Cal.Rptr. 878 (Pickrel).) More recent decisions have reached this conclusion despite a 1993 amendment to the FEHA that plaintiff argues repealed section 132a, at least in part. Before the 1993 amendment, the FEHA provided: "Nothing contained in [the FEHA] shall be deemed to repeal any of the provisions of ... any ... law of this state relating to discrimination because of ... physical disability [or] mental disability...." (Gov. *448 Code, former § 12993, subd. (a); Stats.1992, ch. 913, § 25, p. 4325.) The 1993 amendment added the phrase: "unless those provisions provide less protection to the enumerated classes of persons covered under this part." (Gov.Code, § 12993, subd. (a).)
In this case, we consider whether FEHA and common law wrongful discharge remedies are available to an employee who has suffered discrimination based on a work-related disability, meaning, for present purposes, a disability resulting from an injury "arising out of and in the course of the employment" that gave rise to the discrimination. (Lab.Code, § 3600.) We conclude that section 132a does not provide the exclusive remedy for this type of discrimination and that FEHA and common law remedies are available.

FACTUAL AND PROCEDURAL BACKGROUND
Theresa L. Dillon's complaint alleges that the City of Moorpark employed her as an administrative secretary from May 1990 until February 28, 1994. After she recovered from knee surgery and her doctor released her to return to work, City Manager Steve Kueny terminated her employment, informing her that her residual disability prevented her from performing her essential job functions. Dillon told Assistant City Manager Richard Hare that she could perform her job and that she wanted to return to work, but Hare told her she could not have her job back. Dillon also objected in writing to Kueny, again to no avail. Dillon then filed a charge of disability discrimination with the California Department of Fair Employment and Housing and received notice of a right to sue under Government Code section 12965, subdivision (b). On February 22, 1995, Dillon sued the City of Moorpark, Kueny, and Hare, alleging causes of action for discrimination in violation of the FEHA, wrongful termination in violation of public policy (common law wrongful discharge), breach of contract, and intentional and/or negligent infliction of emotional distress. She sought both compensatory and punitive damages.
Defendants demurred to all causes of action, arguing in part that, because Dillon's disability was work related, section 132a provided her exclusive remedy. Defendants asked the court to take judicial notice of Dillon's section 132a petition, which alleged essentially the same disability discrimination as part of a workers' compensation proceeding. The superior court disagreed that section 132a provided Dillon's exclusive remedy and overruled the demurrers to the FEHA and common law wrongful discharge causes of action. The court sustained the demurrers to the breach of contract and emotional distress causes of action on grounds not relevant here. Dillon then amended her complaint, dropping the breach of contract cause of action and restating the emotional distress cause of action.
On July 7, 1995, defendants petitioned the Court of Appeal for a writ of mandate, again arguing that section 132a provided Dillon's exclusive remedy and that the trial court therefore had erred in overruling the demurrers to Dillon's first two causes of action. The Court of Appeal denied the petition, citing the 1993 amendment to the FEHA, which it found to be "clear and intelligible." According to the Court of Appeal, the 1993 amendment meant "simply this: should any provision of state law offer less protection than does the FEHA, then such provision is inoperable and effectively preempted by the FEHA." The court concluded that section 132a offered "less protection" than the FEHA to victims of disability discrimination because it did not offer as many remedial options, did not provide a right to a jury trial or a right to appeal, and resulted in smaller overall awards. Because section 132a offered "less protection," the court concluded that the FEHA implicitly repealed section 132a. Without explanation, however, the court held that the FEHA only repealed the exclusivity aspect of section 132a. The court stated that section 132a remained an "alternative mechanism[]" for resolving disability discrimination claims.
We granted review in order to consider the interrelationship between section 132a and other statutory and common law remedies for disability discrimination in the workplace.

DISCUSSION

1. Exclusivity of section 132a remedy.
Section 132a provides: "It is the declared policy of this state that there should not be *449 discrimination against workers who are injured in the course and scope of their employment. [¶] (1) Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ..., together with costs and expenses not in excess of two hundred fifty dollars.... Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer."
On its face, section 132a's remedies apply only when employers retaliate against employees for pursuing their rights under the workers' compensation law. In Judson Steel, however, we focused on the first sentence of section 132a, which declares a general policy barring discrimination against injured employees. (Judson Steel, supra, 22 Cal.3d at p. 667, 150 Cal.Rptr. 250, 586 P.2d 564.) We concluded that section 132a's remedies are available whenever an employee suffers "discrimination incurred as the result of his injury" (Judson Steel, supra, 22 Cal.3d at p. 668, 150 Cal.Rptr. 250, 586 P.2d 564), including discrimination based on disability (id. at p. 669, 150 Cal.Rptr. 250, 586 P.2d 564).
In Portillo v. G.T. Price Products, Inc. (1982) 131 Cal.App.3d 285, 290, 182 Cal.Rptr. 291 (Portillo), the court held that, in cases where section 132a applied, it provided an employee's exclusive remedy. The plaintiff in Portillo brought a common law wrongful discharge action, alleging her employer discharged her in retaliation for filing a workers' compensation claim. Defendant demurred, arguing that section 132a provided the plaintiffs exclusive remedy, and the trial court sustained the demurrer.
The Court of Appeal affirmed. (Portillo, supra, 131 Cal.App.3d at p. 286, 182 Cal. Rptr. 291.) Noting that the Workers' Compensation Appeals Board had "`full ... jurisdiction'" to resolve section 132a claims, the court found applicable the exclusive remedy provisions that apply to other workers' compensation remedies. (Portillo, supra, 131 Cal.App.3d at p. 287, 182 Cal.Rptr. 291; see Lab.Code, §§ 3600, 3602, subd. (a).) The court emphasized the legislative compromise underlying the workers' compensation law: "The Workers' Compensation Act is designed to afford workers quick determination of their claims for injury without regard to the common law questions of liability, negligence or fault on the part of and other common law defenses available to the employer. The Legislature has balanced this imposition or burden on the employer by limiting the employee to seek redress in a single forum, the Workers' Compensation Appeals Board. On balance, the fact that the exclusivity of remedy before the Workers' Compensation Appeals Board is for the benefit of workers generally outweighs any occasional disadvantage that could be argued." (Portillo, supra, 131 Cal.App.3d at pp. 287-288, 182 Cal.Rptr. 291, italics added.) The court also quoted Labor Code section 5300, which provides that proceedings "[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" "shall be instituted before the [Workers' Compensation] [A]ppeals [B]oard and not elsewhere...." (Lab.Code, § 5300, subd. (a), italics added; see Portillo, supra, 131 Cal.App.3d at p. 287, 182 Cal.Rptr. 291.) Finally, the court emphasized that section 132a addressed the precise wrong that the plaintiff alleged (Portillo, supra, 131 Cal.App.3d at pp. 288-289, 182 Cal.Rptr. 291) and that courts should not, by enforcing a common law remedy, "say that a different rule for the particular facts should have been written by the Legislature" (id. at p. 290, 182 Cal.Rptr. 291). Accordingly, the court held that section 132a provided the plaintiffs exclusive remedy and affirmed the judgment of dismissal. (Portillo, supra, 131 Cal.App.3d at p. 290, 182 Cal.Rptr. 291.)
In Pickrel, the court extended Portillo to a case specifically involving disability discrimination. The plaintiff in Pickrel brought an FEHA cause of action alleging termination of her employment based on a "physical handicap." (Pickrel, supra, 205 Cal.App.3d at p. 1060, 252 Cal.Rptr. 878.) The trial court *450 sustained a demurrer, and the Court of Appeal affirmed. (Ibid.) Citing Portillo, supra, 131 Cal.App.3d 285, 182 Cal.Rptr. 291, and following much of its reasoning, the court held that section 132a provided the exclusive remedy for an employee claiming discrimination based on a work-related disability. (Pickrel, supra, 205 Cal.App.3d at pp. 1063-1064, 252 Cal.Rptr. 878; see also Usher v. American Airlines, Inc., supra, 20 Cal. App.4th at pp. 1526-1527, 25 Cal.Rptr.2d 335 [following Pickrel]; Denney v. Universal City Studios, Inc., supra, 10 Cal.App.4th at p. 1235, 13 Cal.Rptr.2d 170 [same]; Fortner v. Safeway Stores, Inc., supra, 229 Cal. App.3d at pp. 548, 551, 280 Cal.Rptr. 409 [same].) The court stated that the result in Portillo was "consonant with the trend of recent decisions `... to narrow the range of exceptions to exclusivity, [thus] benefitt[ing] both employers and employees within the system, by ... preserving the low cost, efficiency and certainty of recovery which characterizes workers' compensation.' (Continental Casualty Co. v. Superior Court (1987) 190 Cal.App.3d 156, 162 [235 Cal.Rptr. 260].)" (Pickrel, supra, 205 Cal.App.3d at p. 1064, 252 Cal.Rptr. 878.)
After the Pickrel decision, we addressed the scope of workers' compensation exclusivity in Shoemaker v. Myers (1990) 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054 (Shoemaker) and Gantt, supra, 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680. Both cases considered what remedies are available to an employee who suffers a physical or psychological injury as a result of wrongful termination of employment, but neither case involved termination based on a work-related injury or disability. Therefore, neither case implicated section 132a directly.
In Shoemaker, the employee alleged wrongful termination and related causes of action, including termination in violation of a "whistle-blower" protection statute (Gov. Code, former § 19683). We concluded "that disabling injuries, whether physical or mental, arising from termination of employment are generally within the coverage of workers' compensation and subject to the exclusive remedy provisions, unless the discharge comes within an express or implied statutory exception or the discharge results from risks reasonably deemed not to be within the compensation bargain." (Shoemaker, supra, 52 Cal.3d at p. 7, 276 Cal.Rptr. 303, 801 P.2d 1054.) By referring to the "compensation bargain," we recognized the same legislative compromise that the Portillo court cited (see Portillo, supra, 131 Cal.App.3d at pp. 287-288, 182 Cal.Rptr. 291): "[T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault, but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.]" (Shoemaker, supra, 52 Cal.3d at p. 16, 276 Cal.Rptr. 303, 801 P.2d 1054.)
Though we stated that most injuries arising from termination of employment fall within the compensation bargain, we noted that "the exclusive remedy provisions are not applicable [to injuries arising from] `conduct where the employer or insurer stepped out of their proper roles' [citations]...." (Shoemaker, supra, 52 Cal.3d at p. 16, 276 Cal. Rptr. 303, 801 P.2d 1054.) Therefore, we concluded that an injury resulting from a wrongful termination in violation of a whistle-blower statute "lies well outside the compensation bargain," and the exclusive remedy provisions do not apply. (Id. at p. 23, 276 Cal.Rptr. 303, 801 P.2d 1054.) We reasoned that, by enacting the whistle-blower statute, "[t]he Legislature clearly intended to afford an additional remedy to those already granted under other provisions of the law; otherwise [the whistle-blower statute] would be rendered meaningless. [Citation.]" (Id. at p. 22, 276 Cal.Rptr. 303, 801 P.2d 1054.)
The decision in Shoemaker turned in part on the fact that the whistleblower statute constituted a specific declaration of the Legislature's intent to create a new, additional remedy. The same could not be said about common law remedies, and we expressly did not decide in Shoemaker whether, in addition to a claim under the whistle-blower statute, the plaintiff could also pursue a common law wrongful discharge claim. (Shoemaker, *451 supra, 52 Cal.3d at p. 23, 276 Cal. Rptr. 303, 801 P.2d 1054.) We addressed that unresolved question in Gantt, concluding that "the ... `compensation bargain' cannot encompass conduct, such as sexual or racial discrimination, `obnoxious to the interests of the state and contrary to public policy and sound morality.'" (Gantt, supra, 1 Cal.4th at p. 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680, quoting Petermann v. International Brotherhood of Teamsters (1959) 174 Cal.App.2d 184, 188, 344 P.2d 25; see also Fermino v. Fedco, Inc. (1994) 7 Cal.4th 701, 714-715, 30 Cal. Rptr.2d 18, 872 P.2d 559.) Accordingly, we held that workers' compensation exclusivity did not preclude a common law wrongful discharge claim: "we decline the invitation to retreat from our long-held view that employees discharged in violation of fundamental public policy may bring an action against their employers sounding in tort." (Gantt, supra, 1 Cal.4th at p. 1098, 4 Cal.Rptr.2d 874, 824 P.2d 680.)
In Angell, the court considered whether Pickrel's holding remained valid in light of Shoemaker and Gantt; that is, whether wrongful termination in violation of section 132a "could be considered ` "a risk reasonably encompassed within the compensation bargain"'" for which workers' compensation is the exclusive remedy. (Angell, supra, 21 Cal.App.4th at p. 994, 26 Cal.Rptr.2d 541, quoting Gantt, supra, 1 Cal.4th at p. 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680.) The court seemed to accept without discussion that disability discrimination could form the basis of a common law wrongful discharge claim. (Angell, supra, 21 Cal.App.4th at p. 995, 26 Cal.Rptr.2d 541.) The court also acknowledged our holding in Gantt that these claims do not fall within the compensation bargain. (Angell, supra, 21 Cal.App.4th at pp. 990, 993, 26 Cal.Rptr.2d 541.) Nevertheless, the court concluded that, by enacting section 132a, "... the Legislature specifically placed this type of discriminatory termination within the scope of the compensation bargain." (Angell, supra, 21 Cal.App.4th at p. 996, 26 Cal.Rptr.2d 541.) Accordingly, the court held that section 132a provided an employee's exclusive remedy for discrimination based on a work-related disability, precluding claims under both the FEHA and the common law. (Angell, supra, 21 Cal.App.4th at p. 997, 26 Cal.Rptr.2d 541; see also Adkins v. State of California, supra, 50 Cal.App.4th at pp. 1819-1822, 59 Cal.Rptr.2d 59 [following Angell]; Langridge v. Oakland Unified School Dist., supra, 25 Cal.App.4th at pp. 668-670, 31 Cal.Rptr.2d 34 [same].)
In rejecting the conclusions of Portillo, Pickrel, Angell, and related cases, the Court of Appeal in this case focused on the 1993 amendment to the FEHA, reading it as repealing by implication all antidiscrimination laws that provide "less protection" than the FEHA, including section 132a. Notably, the Court of Appeal did not find an outright repeal of section 132a, but merely a repeal of its exclusivity, thus permitting employees to pursue FEHA and common law remedies in addition to section 132a remedies. We agree with the Court of Appeal that section 132a does not preclude Dillon's FEHA and common law causes of action, but, unlike the Court of Appeal, we reach this conclusion without relying on the 1993 amendment to the FEHA. Accordingly, we do not decide what effect, if any, the 1993 FEHA amendment had on section 132a.
Though the Court of Appeal decided Portillo 16 years ago, and though other Court of Appeal decisions have affirmed its holding, we have never addressed its validity. We do so now.
As noted, the Portillo court held that, when section 132a applies, it provides an employee's exclusive remedy. (Portillo, supra, 131 Cal.App.3d at p. 290, 182 Cal.Rptr. 291.) In reaching this conclusion, the court applied the exclusive remedy provisions that apply to other workers' compensation remedies. (See Lab.Code, §§ 3600, 3602, subd. (a).) But section 132a is quite different from other workers' compensation remedies. Most workers' compensation remedies compensate an employee for a medical injury. Section 132a, however, addresses a breach of an employee's civil rights and applies regardless of whether that breach causes a medical injury. Because of this distinction, we see no compelling reason to treat section 132a like other workers' compensation remedies.
*452 Moreover, the existence of a workers' compensation remedy does not by itself establish that the remedy is exclusive. Rather, the scope of workers' compensation exclusivity depends on the terms of the exclusive remedy provisions. Section 132a does not itself contain an exclusive remedy clause, and, as explained below, the general exclusive remedy provisions of the workers' compensation law expressly do not apply to section 132a.
Labor Code section 3600, subdivision (a), provides: "Liability for the compensation provided by this division, in lieu of any other liability whatsoever ..., shall ... exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment...." (Italics added.) When section 3600 refers to "this division," it refers to division 4 of the Labor Code. Section 132a, on the other hand, is in division 1 of the Labor Code. Similarly, Labor Code section 3602, subdivision (a), provides: "Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is ... the sole and exclusive remedy of the employee...." (Italics added.) Labor Code section 3207 defines "`[c]ompensation'" as "compensation under Division 4 ... includ[ing] every benefit or payment conferred by Division 4 upon an injured employee...." Again, section 132a is in division 1 of the Labor Code, not division 4. Thus, the plain language of the exclusive remedy provisions of the workers' compensation law apparently limits those provisions to division 4 remedies. Remedies that the Legislature placed in other divisions of the Labor Code are simply not subject to the workers' compensation exclusive remedy provisions.
The Portillo court also relied on the "compensation bargain" underlying the workers' compensation law, whereby "[t]he Workers' Compensation Act ... afford[s] workers quick determination of their claims" but "limit[s] the employee to ... a single forum, the Workers' Compensation Appeals Board." (Portillo, supra, 131 Cal.App.3d at p. 287, 182 Cal.Rptr. 291.) The court reasoned that this same "compensation bargain" applied implicitly to section 132a. In other words, section 132a affords workers an inexpensive and quick remedy for discrimination based on a work-related disability, but that remedy is exclusive. (Portillo, supra, 131 Cal.App.3d at pp. 287-288, 182 Cal.Rptr. 291.)
Again, the Portillo court erred. Though the compensation bargain, and in particular the exclusive remedy principle, applies to most workers' compensation proceedings, we recognized in Shoemaker and Gantt that certain employer conduct falls outside the compensation bargain. Specifically, we held in Shoemaker that an injury resulting from a wrongful termination in violation of a whistleblower protection statute "lies well outside the compensation bargain," and the exclusive remedy provisions do not apply. (Shoemaker, supra, 52 Cal.3d at p. 23, 276 Cal.Rptr. 303, 801 P.2d 1054.) In Gantt, we reaffirmed Shoemaker and extended its holding to a case involving a common law wrongful discharge cause of action. We concluded that "the ... `compensation bargain' cannot encompass conduct, such as sexual or racial discrimination, `obnoxious to the interests of the state and contrary to public policy and sound morality.'" (Gantt, supra, 1 Cal.4th at p. 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680, quoting Petermann v. International Brotherhood of Teamsters, supra, 174 Cal.App.2d at p. 188, 344 P.2d 25.) Termination in violation of section 132a is just as "`obnoxious to the interests of the state and contrary to public policy and sound morality'" as sexual or racial discrimination. (Gantt, supra, 1 Cal.4th at p. 1101, 4 Cal.Rptr.2d 874, 824 P.2d 680.) Therefore, a section 132a violation, like sexual and racial discrimination, falls outside the compensation bargain, and workers' compensation is not the exclusive remedy.
In addition, the Portillo court relied in part on Labor Code section 5300, which provides that proceedings "[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" "shall be instituted before the [Workers' Compensation] [A]ppeals [B]oard and not elsewhere...." (Lab.Code, § 5300, subd. (a), italics added; see Portillo, supra, 131 Cal. App.3d at p. 287, 182 Cal.Rptr. 291.) But, even assuming an employee's rights *453 under section 132a are "right[s] ... incidental" to "the recovery of compensation," Labor Code section 5300 merely establishes the Workers' Compensation Appeals Board as the exclusive forum for pursuing a section 132a claim; it does not establish that the section 132a claim is the employee's exclusive remedy. Therefore, Labor Code section 5300 provides weak support for the Portillo court's conclusion.
Finally, the Portillo court emphasized that section 132a addressed the precise wrong that the plaintiff alleged (Portillo, supra, 131 Cal.App.3d at pp. 288-289, 182 Cal. Rptr. 291) and that courts should not "say that a different rule for the particular facts should have been written by the Legislature." (Id. at p. 290, 182 Cal.Rptr. 291; see also Angell, supra, 21 Cal.App.4th at p. 996, 26 Cal.Rptr.2d 541 [making a similar argument]; Adkins v. State of California, supra, 50 Cal.App.4th at pp. 1819-1822, 59 Cal. Rptr.2d 59 [following Angell]; Langridge v. Oakland Unified School Dist., supra, 25 Cal. App.4th at pp. 668-670, 31 Cal.Rptr.2d 34 [same].) This argument, however, fails to recognize that the Legislature sometimes enacts a new remedy, intending to supplement other remedies. (See, e.g., Rojo, supra, 52 Cal.3d at pp. 75, 82, 276 Cal.Rptr. 130, 801 P.2d 373 [the FEHA does not preempt common law remedies].) When courts enforce a common law remedy despite the existence of a statutory remedy, they are not "say[ing] that a different rule for the particular facts should have been written by the Legislature." (Portillo, supra, 131 Cal.App.3d at p. 290, 182 Cal.Rptr. 291.) They are simply saying that the common law "rule" coexists with the statutory "rule."
Accordingly, we find Portillo's reasoning unpersuasive. Moreover, the Court of Appeal cases that followed Portillo do not persuade us that section 132a is exclusive. In Pickrel, the court simply cited Portillo and followed much of its reasoning. The court noted that the result in Portillo was "consonant with the trend of recent decisions" (Pickrel, supra, 205 Cal.App.3d at p. 1064, 252 Cal.Rptr. 878), but of course we do not decide cases based on trends. In Usher, Denney, and Fortner, the court merely followed Pickrel. (Usher v. American Airlines, Inc., supra, 20 Cal.App.4th at pp. 1526-1527, 25 Cal.Rptr.2d 335; Denney v. Universal City Studios, Inc., supra, 10 Cal.App.4th at p. 1235, 13 Cal.Rptr.2d 170; Fortner v. Safeway Stores, Inc., supra, 229 Cal.App.3d at pp. 548, 551, 280 Cal.Rptr. 409.) In Angell, as in Portillo, the court failed to recognize that the Legislature sometimes intends statutory remedies to supplement, not supplant, common law remedies. (Angell, supra, 21 Cal.App.4th at p. 996, 26 Cal.Rptr.2d 541; Portillo, supra, 131 Cal.App.3d at p. 290, 182 Cal.Rptr. 291.) In Adkins and Langridge, the court merely followed Angell. (Adkins v. State of California, supra, 50 Cal.App.4th at pp. 1819-1822, 59 Cal.Rptr.2d 59; Langridge v. Oakland Unified School Dist., supra, 25 Cal.App.4th at pp. 668-670, 31 Cal.Rptr.2d 34.)
The provisions of the FEHA, and our decisions interpreting it, further support our conclusion that section 132a is not exclusive. The FEHA broadly announces "the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of ... physical disability [or] mental disability...." (Gov. Code, § 12920.) The FEHA further provides that "[i]t shall be an unlawful employment practice ... [¶] ... [f]or an employer, because of the ... physical disability [or] mental disability ... of any person, to ... discriminate against the person...." (Gov. Code, § 12940, subd. (a).) Nothing in these provisions suggests that the FEHA only applies to physical or mental disabilities that are unrelated to work. Moreover, the FEHA declares that its "provisions ... shall be construed liberally for the accomplishment of the purposes thereof." (Gov.Code, § 12993, subd. (a).) A construction of section 12940, subdivision (a), that narrows the term "disability" to disabilities unrelated to work seems inconsistent with the principle of liberal construction.
Furthermore, our decisions have consistently emphasized the breadth of the FEHA. In State Personnel Bd. v. Fair Employment & Housing Com. (1985) 39 Cal.3d 422, 217 *454 Cal.Rptr. 16, 703 P.2d 354, we considered whether the FEHA covered state civil service employees despite similar antidiscrimination provisions in the Civil Service Act. (See Gov.Code, § 19702, subd. (a).) We concluded that "[t]he FEHA was meant to supplement, not ... be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination...." (State Personnel Bd. v. Fair Employment & Housing Com., supra, 39 Cal.3d at p. 431, 217 Cal.Rptr. 16, 703 P.2d 354, italics added.) Similarly, in Rojo, we considered whether victims of sex discrimination could bring common law wrongful discharge claims in addition to FEHA claims. We concluded that the Legislature intended the FEHA "to amplify" (Rojo, supra, 52 Cal.3d at p. 75, 276 Cal.Rptr. 130, 801 P.2d 373) other remedies and "to expand" (id. at p. 80, 276 Cal.Rptr. 130, 801 P.2d 373) the rights of persons who are victims of employment discrimination. (See also Jennings v. Marralle (1994) 8 Cal.4th 121, 135, 32 Cal.Rptr.2d 275, 876 P.2d 1074 [The Legislature intended "to create new rights within the FEHA statutory scheme while leaving existing rights intact...."].) None of these cases suggest that non-FEHA remedies circumscribe the scope of the FEHA.
Finally, the public education provisions of the workers' compensation law support our conclusion that section 132a is not exclusive. Labor Code section 139.6 provides: "(a) The administrative director shall establish and effect within the Division of Workers' Compensation a continuing program to provide information and assistance concerning the rights, benefits, and obligations of the workers' compensation law to employees and employers subject thereto. The program shall include, but not be limited to, the following: [¶] ... [¶] (2) The preparation, publishing, and as necessary, updating, of a pamphlet advising injured workers of their basic rights under workers' compensation law, and informing them of rights under ... the provisions of the Fair Employment and Housing Act relating to individuals with a disability." (Italics added.) This legislative mandate to inform "injured workers" of their FEHA rights would make little sense if section 132a provided an injured worker's exclusive remedy for disability discrimination.
In conclusion, we hold that section 132a does not provide an exclusive remedy and does not preclude an employee from pursuing FEHA and common law wrongful discharge remedies. We disapprove any cases that suggest otherwise. Nevertheless, we emphasize that not every instance of disability discrimination in violation of section 132a gives rise to a valid FEHA claim. The term "disability" has a specific meaning in the context of the workers' compensation law that it has in no other context. On the other hand, the FEHA includes detailed definitions of "`Physical disability'" and "`Mental disability' "that make no reference to the workers' compensation law. (Gov.Code, § 12926, subds. (i), (k).) Because the standards for establishing disability discrimination may well be different under the FEHA than under section 132a, a decision in an employee's favor on a section 132a petition would not establish a FEHA violation. Moreover, to the extent section 132a and the FEHA overlap, equitable principles preclude double recovery for employees. For example, employees who settle their claims for lost wages and work benefits as part of a section 132a proceeding could not recover these damages as part of a subsequent FEHA proceeding.

2. Dillon's common law wrongful discharge cause of action.
In the case of Dillon's common law wrongful discharge cause of action, our conclusion that section 132a does not provide an exclusive remedy is only half the analysis. We must also decide whether disability discrimination can form the basis of a common law action of this type.
In Tameny, we reaffirmed "that when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action...." (Tameny, supra, 27 Cal.3d at p. 170, 164 Cal.Rptr. 839, 610 P.2d 1330.) In that case, the plaintiff alleged that his employer terminated him because he refused to participate in an illegal scheme to fix gasoline prices. (Id. at p. 169, 164 Cal.Rptr. 839, 610 *455 P.2d 1330.) The trial court sustained the defendants' demurrer to the plaintiffs tort cause of action for wrongful discharge, and the plaintiff appealed. (Id. at p. 171, 164 Cal.Rptr. 839, 610 P.2d 1330.) We reversed, noting the long-standing rule "that a wrongful act committed in the course of a contractual relationship may afford both tort and contractual relief...." (Id. at pp. 174-175, 164 Cal.Rptr. 839, 610 P.2d 1330.) We reasoned that "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act ... reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action." (Id. at p. 176, 164 Cal.Rptr. 839, 610 P.2d 1330.) In subsequent cases applying Tameny, we recognized tort causes of action for wrongful discharge based on sex (Rojo, supra, 52 Cal.3d at pp. 90-91, 276 Cal.Rptr. 130, 801 P.2d 373), age (Stevenson, supra, 16 Cal.4th at pp. 897, 909, 66 Cal. Rptr.2d 888, 941 P.2d 1157), and retaliation for testifying truthfully (Gantt, supra, 1 Cal.4th at pp. 1086-1087, 4 Cal.Rptr.2d 874, 824 P.2d 680). We have not, however, addressed whether disability discrimination, like sex and age discrimination, can form the basis of a common law wrongful discharge claim.
In Stevenson, we articulated a fourpart test for determining whether a particular policy can support a common law wrongful discharge claim. The policy "must be: (1) delineated in either constitutional or statutory provisions; (2) `public' in the sense that it `inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." (Stevenson, supra, 16 Cal.4th at p. 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157; see also Jennings v. Marralle, supra, 8 Cal.4th at p. 130, 32 Cal.Rptr.2d 275, 876 P.2d 1074; Gantt, supra, 1 Cal.4th at pp. 1090, 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680; Rojo, supra, 52 Cal.3d at pp. 89-90, 276 Cal.Rptr. 130, 801 P.2d 373.) "`[P]ublic policy' as a concept is notoriously resistant to precise definition, and ... courts should venture into this area, if at all, with great care...." (Gantt, supra, 1 Cal.4th at p. 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680.) Therefore, when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action. Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends, and therefore it "presents no impediment to employers that operate within the bounds of law." (Ibid.) For example, in Jennings, we noted that the FEHA does not apply to employers of fewer than five employees (Gov.Code, § 12926, subd. (d)), and therefore we found no fundamental public policy against age discrimination by these employers. (Jennings v. Marralle, supra, 8 Cal.4th at pp. 135-136, 32 Cal.Rptr.2d 275, 876 P.2d 1074; see also Reno v. Baird (1998) 18 Cal.4th 640, 663-664, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)
As in Stevenson, "[t]hree of the[] four requirements [of a policy that can support a common law wrongful discharge claim] are not reasonably subject to dispute in this case." (Stevenson, supra, 16 Cal.4th at p. 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) First, the FEHA clearly delineates a policy against disability discrimination in employmentat least in the case of employers of five or more employees. (Gov.Code, §§ 12940, subd. (a), 12926, subd. (d).) Moreover, the FEHA is just one expression of a much broader policy against disability discrimination that appears in a variety of legislative enactments. (See, e.g., Civ.Code, §§ 51, 54 [barring disability discrimination in public accommodations]; Gov.Code, §§ 11135 [barring disability discrimination in state-funded programs], 19230, subd. (a) [declaring state policy to encourage disabled persons to participate in the social and economic life of the state], 19230, subds. (b), (c), 19702 [barring disability discrimination in state civil service employment].) Second, the policy "`inures to the benefit of the public'" (Stevenson, supra, 16 Cal.4th at p. 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157) because (1) any member of the public may develop a disability and become the victim of disability *456 discrimination, (2) the public at large benefits from the productivity of disabled employees, and (3) any type of invidious discrimination "`foments ... strife and unrest.'" (Id. at p. 895, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) Third, the policy against disability discrimination has been included in the FEHA since July 1, 1974, and therefore is well established. (Stats.1973, ch. 1189, §§ 6, 9, pp. 2501-2502.)
Accordingly, we turn to whether the policy against disability discrimination is "substantial and fundamental." Disability discrimination is indistinguishable in many ways from race and sex discrimination. Specifically, it can "attack[] the individual's sense of selfworth in much the same fashion as race or sex discrimination." (Stevenson, supra, 16 Cal.4th at p. 896, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) Nevertheless, an employer may have valid reasons to treat disabled employees differently than nondisabled employees, and the FEHA recognizes this fact by expressly providing that it does not "subject an employer to any legal liability resulting from the refusal to employ or the discharge of an employee with a physical or mental disability, where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations...." (Gov. Code, § 12940, subd. (a)(1).)
But this caveat does not lead us to conclude that the policy against disability discrimination is not "substantial and fundamental." Even in the case of race, sex, and age discrimination, the FEHA does not prohibit discrimination that is "based upon a bona fide occupational qualification." (Gov.Code, § 12940.) Similarly, our opinions articulating "substantial and fundamental" policies against sex and age discrimination use the term "discrimination" only in the pejorative sense to refer to arbitrary judgments about individuals based on group stereotypes. (Stevenson, supra, 16 Cal.4th at p. 896, 66 Cal.Rptr.2d 888, 941 P.2d 1157.)
Disability sometimes impacts a person's ability to perform a particular job, in which case the employer may treat a disabled employee differently than a nondisabled employee. Nevertheless, if disabled employees can prove that they can perform the job duties as effectively as nondisabled employees, taking into consideration the possibility, if any, that their condition will change, as well as the employer's shorthand long-term needs, then we think discrimination based on disability, like sex and age discrimination, violates a "substantial and fundamental" public policy and can form the basis of a common law wrongful discharge claim. Nevertheless, this remedy must be "carefully tethered to fundamental policies that are delineated" in the FEHA on which it is based. (Gantt, supra, 1 Cal.4th at p. 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680.) Accordingly, just as disability discrimination in violation of section 132a does not alone establish a valid FEHA claim, it also does not alone establish a valid common law wrongful discharge claim. Furthermore, to the extent section 132a, the FEHA, and the common law remedies overlap, equitable principles preclude multiple recoveries for the same injury.
We conclude that disability discrimination can form the basis of a common law wrongful discharge claim. Because section 132a does not provide the exclusive remedy for discrimination based on a work-related disability, the trial court was correct to overrule the demurrer to Dillon's common law wrongful discharge cause of action.

3. Dillon's intentional infliction of emotional distress cause of action.
We held in Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal.3d 148, 160, 233 Cal.Rptr. 308, 729 P.2d 743, that the exclusive remedy provisions of the workers' compensation law preclude a civil claim for intentional infliction of emotional distress if the employer's actions giving rise to the claim were "a normal part of the employment relationship." The Court of Appeal did not decide whether Cole applies here, and defendants did not raise this issue in their petition for review. Accordingly, we also do not reach the issue.

CONCLUSION
Section 132a does not provide an exclusive remedy precluding FEHA and common *457 law wrongful discharge claims. In addition, disability discrimination can form the basis of a common law wrongful discharge claim. Accordingly, the trial court was correct to overrule defendants' demurrer to Dillon's FEHA and common law wrongful discharge claims, and the Court of Appeal was correct to deny defendants' petition for a writ of mandate. We affirm the judgment of the Court of Appeal.
GEORGE, C.J., and MOSK, KENNARD and WERDEGAR, JJ., concur.
BROWN, Justice, concurring and dissenting.
I concur in the majority's conclusion that plaintiff Theresa L. Dillon may pursue a disability discrimination claim under the California Fair Employment and Housing Act (FEHA) (Gov.Code, § 12900 et seq.). I respectfully dissent from the majority's conclusion that Dillon can also maintain a common law cause of action for wrongful discharge in violation of public policy. (See Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (Tameny).)

I
The Legislature clearly envisioned at least some circumstances in which workers injured on the job could pursue both workers' compensation remedies and remedies under FEHA and the Americans with Disabilities Act of 1990(ADA) (42 U.S.C. § 12101 et seq.). In 1993, the Legislature amended Labor Code section 139.6, part of the workers' compensation law, to add the language italicized below: "(a) The administrative director shall establish and effect within the Division of Workers' Compensation a continuing program to provide information and assistance concerning the rights, benefits, and obligations of the workers' compensation law to employees and employers subject thereto. The program shall include, but not be limited to, the following: [¶] ... [¶] (2) The preparation, publishing, and as necessary, updating, of a pamphlet advising injured workers of their basic rights under workers' compensation law, and informing them of rights under the Americans with Disabilities Act, and the provisions of the Fair Employment and Housing Act relating to individuals with a disability. ..." (Stats.1993, ch. 121, § 23.) The resulting pamphlet contains a detailed discussion of both the ADA and FEHA proscriptions against disability discrimination.
The legislative mandate that "injured workers" be informed of "rights under the Americans with Disabilities Act, and the provisions of the Fair Employment and Housing Act relating to individuals with a disability" (Lab.Code, § 139.6, subd. (a)(2)) presupposes that, at least under certain circumstances, they enjoy such rights. Thus, the majority correctly concludes that an employee who has suffered discrimination based on a work-related disability can pursue a FEHA cause of action, provided he or she is "disabled" within the strict definition of that statutory scheme and could have been reasonably accommodated. (See Gov.Code, § 12926, subds. (i) & (k); id., § 12940, subd. (a)(1); see also Cassista v. Community Foods, Inc. (1993) 5 Cal.4th 1050, 1061, 22 Cal.Rptr.2d 287, 856 P.2d 1143["[T]he touchstone of a qualifying handicap or disability is an actual or perceived physiological disorder which affects a major body system and limits the individual's ability to participate in one or more major life activities."].)
I decline, however, to join the majority's extended discussion of whether Labor Code section 132a (section 132a) provides the exclusive remedy for discrimination based on work-related disabilities. As the majority readily acknowledges, "[o]n its face, section 132a's remedies apply only when employers retaliate against employees for pursuing their rights under the workers' compensation law." (Maj. opn., ante, at p. 449 of 77 Cal. Rptr.2d, at p. 756 of 959 P.2d.) Although we have held that section 132a impliedly covers discrimination based on work-related disabilities, our decision to do so is problematic at best. (See Judson Steel Corp. v. Workers' Comp. Appeals Bd. (1978) 22 Cal.3d 658, 669-670, 150 Cal.Rptr. 250, 586 P.2d 564 (dis. opn. of Richardson, J., joined by Clark and Manuel, JJ.).) In my view, it makes little sense to consider whether section 132a provides the exclusive remedy for work-related disability discrimination when, in fact, it may *458 provide no such remedy at all. Stated somewhat differently, it is unfair to pin all of the blame on the Courts of Appeal in Portillo v. G.T. Price Products, Inc. (1982) 131 Cal. App.3d 285, 182 Cal.Rptr. 291, Pickrel v. General Telephone Co. (1988) 205 Cal.App.3d 1058, 252 Cal.Rptr. 878, and their progeny for misconstruing section 132a when, in fact, the real culprit may be our own decision in Judson Steel.

II
With respect to Dillon's Tameny claim, I would conclude the trial court erroneously overruled the demurrer to her common law wrongful discharge cause of action predicated on the public policy articulated in FEHA for the reasons set forth in my dissenting opinion in Stevenson v. Superior Court (1997) 16 Cal.4th 880, 911-925, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (Stevenson). "FEHA is a comprehensive statute that carefully balances complementary administrative and judicial remedies not only to make whole victims of discrimination in the workplace, but also to penalize these unlawful business practices and prevent their recurrence. Permitting a parallel common law tort claim puts courts in the untenable position of using a legislative declaration of public policy as a touchstone to justify duplicative remedies that ultimately can serve only to frustrate legislative intent. In addition, recognizing a FEHA-based cause of action for wrongful discharge in violation of public policy contradicts the rationale of this exception to the at-will employment doctrine. When the Legislature has provided an adequate statutory remedy to fully protect the interests of both the employee and the public, the courts have neither reason nor need to intercede." (Id. at p. 912, 66 Cal.Rptr.2d 888, 941 P.2d 1157.)
The procedural history of this case highlights the adequacy of the statutory remedy: Dillon filed a charge of disability discrimination with the Department of Fair Employment and Housing, which issued a right-tosue letter, as it routinely does. (See Stevenson, supra, 16 Cal.4th at pp. 914-915, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (dis. opn. of Brown, J.).) Dillon's present action in superior court includes a claim of discrimination under FEHA for which she may recover compensatory and punitive damages. (See State Personnel Bd. v. Fair Employment & Housing Com. (1985) 39 Cal.3d 422, 434, 217 Cal.Rptr. 16, 703 P.2d 354.) Her tortious wrongful discharge claim is thus entirely duplicative and in no respect advances the rationale of Tameny, supra, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330. (See Stevenson, supra, 16 Cal.4th at pp. 919-925, 66 Cal.Rptr.2d 888, 941 P.2d 1157 (dis. opn. of Brown, J.).)

III
For the reasons stated above, I would affirm the judgment of the Court of Appeal except to the extent it concluded Dillon has stated a cause of action for tortious wrongful discharge. As to that cause of action, I would direct the Court of Appeal to grant defendants' petition for a writ of mandate.
BAXTER, J., concurs.