**Jesse Leonard LEACH, Jr., Plaintiff,**

v.

**MADERA GLASS COMPANY, et al., Defendant.**

**No. CIV–F–98–5001 REC/SMS.**

United States District Court, E.D. California.

Dec. 15, 1998.

Order Denying Reconsideration, Jan. 4, 1999.

Jesse Leonard Leach, Jr., Porterville, CA, pro se.

Margaret Rosenthal, Rodi Pollock Pettker Galbraith and Phillips, Los Angeles, CA, for Madera Glass, Ernie Talamentes.

ORDER DISMISSING ACTION AGAINST DEFENDANT ERNIE TALAMANTES AND DOE DEFENDANTS, GRANTING DEFENDANT MADERA GLASS COMPANY'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANTS

COYLE, District Judge.

On December 7, 1998, the court heard defendant Madera Glass Company's Motion for Summary Judgment.

Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants summary judgment for Madera Glass Company for the reasons set forth herein.

Plaintiff, Jesse Leonard Leach, Jr., proceeding in pro per, filed a complaint against Madera Glass Company, Ernie Talamantes, and Does 1–100 in the Madera County Superior Court on December 1, 1997. The action was removed to this court on January 2, 1998. The First Cause of Action alleges that plaintiff's termination from employment with Madera Glass Company on December 19, 1996 was in breach of employment contract. The First Cause of Action alleges in pertinent part:

7. Plaintiff entered into an employment contract to act as a Maintenance Mechanic. Said contract was breached when Plaintiff both verbally and through written form on December 19, 1996, was terminated. . . .

8. Plaintiff has in good faith given 7 ½ years of excellent service to Madera Glass. Plaintiff was earning approximately $40,000 annually prior to the termination. Plaintiff did nothing and continues to do nothing that could be construed as a breach of contract and enters this action with clean hands. Defendants knew of Plaintiff's disability and made no reasonable accommodation for Plaintiff under the Americans with Disabilities Act. Plaintiff had a good implied employment contract and should not have been terminated but for good cause.

The Second Cause of Action alleges that his termination was in retaliation for the filing of a worker's compensation claim in violation of California Labor Code § 132a. The Second Cause of Action alleges in pertinent part:

14. It is unlawful to discriminate against or terminate an injured worker for filing a worker's compensation claim. As Defendants forced Plaintiff into an involuntary 'unemployment' because of his filing a worker's compensation claim, defendants have violated the applicable statute. This Plaintiff is entitled to an increase over and above his basic worker's compensation benefits as well as reinstatement of his position and reimbursement of lost wages, if and when he recovers from his injuries.

The Third Cause of Action alleges that plaintiff's termination was in retaliation for the filing by plaintiff of a grievance with his union on March 22, 1996.

A. *Defendant Ernie Talamantes and Doe Defendants.*

Defendant Ernie Talamantes was plaintiff's supervisor at Madera Glass. Talamantes has not appeared in this action. According to footnote 1 of the Joint Scheduling Report filed on March 17, 1998, Talamantes has not appeared because he does not believe that he has been served. During a telephone conference call discussing the issues to be addressed in the Joint Scheduling Report, plaintiff stated that he believed that Talamantes was served as the same time as Madera Glass and agreed to search for a proof of service. These representations are repeated in the Scheduling Conference Order filed on March 26, 1998. There is no indication in the file of a return of service showing service on Talamantes. Furthermore, in his opposition to Madera Glass's motion for summary judgment, plaintiff does not in any way indicate or establish that Talamantes has been served with summons and complaint in this action.

Rule 4(m), Federal Rules of Civil Procedure, provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specific time. Despite notice given many months ago, plaintiff has neither provided proof of service nor effected service on Ernie Talamantes. Therefore, the court could dismiss this action against Tala-

mantes without prejudice pursuant to Rule 4(m). However, as will be discussed *infra*, Madera Glass is entitled to summary judgment in connection with this action. Any causes of action against Talamantes alleged in the Complaint are dependent upon the same factual and legal circumstances. Therefore, the court concludes that dismissal of this action against Talamantes should be with prejudice because of the failure to effect service and the fact that Talamantes, if he had been served, would be entitled to summary judgment.

There is no evidence or arguments presented by plaintiff that there are any other persons or entities that should be substituted for any of the Doe Defendants. Therefore, the court dismisses this action against the Doe Defendants with prejudice.

### B. *Factual Background.*

#### 1. *Request to Strike Opposition.*

 It is noted that plaintiff has provided no evidentiary support for any of the factual assertions made by plaintiff in his opposition to the motion for summary judgment. He has filed no affidavits under penalty of perjury or provided specific references to evidence supporting any of the assertions made by him. Many of the assertions made by him in his written opposition also are objectionable because they are not based on personal knowledge and no foundation for the assertions are shown. In cases in which the non-moving party will bear the burden of proof at trial, Rule 56(e), Federal Rules of Civil Procedure, requires that the nonmoving party go beyond the pleadings and "by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, Rule 56-260(b), Local Rules of Practice, provides in pertinent part:

Any party opposing a motion for summary judgment ... shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts which are undisputed and deny those which are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial. The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication.

Plaintiff has not complied with this rule. In his opposition to the motion for summary judgment, plaintiff purports to "dispute" certain of the facts asserted by Madera Glass to be undisputed but provides absolutely no evidentiary support for his position. Plaintiff's position is based almost entirely on his vague and/or conclusory "beliefs" or "feelings" rather than any concrete, demonstrative evidence.

For these reasons, Madera Glass requests that the court to strike plaintiff's opposition to the motion for summary judgment.

The court denies this request. The court will determine whether Madera Glass is entitled to summary judgment based on what is asserted in plaintiff's opposition. Because that opposition does not provide the factual and legal basis for a conclusion of genuine issues of material fact, Madera Glass is entitled to summary judgment.[1]

#### 2. *Statement of Facts.*

Defendant Madera Glass Company manufactures glass wine and champagne bottles in various shapes and sizes. To produce the bottles the raw materials necessary for making glass containers are melted in furnaces. The molten glass is then transferred to form-

---

**1.** Plaintiff requests the court to deny this motion for summary judgment "and allow this case to be heard in its' [sic] entirety at a later date, when hopefully Plaintiff may be able to afford counsel." Plaintiff repeated this request at oral argument. However, pursuant to the Scheduling Conference Order, the discovery cut-off date and non-dispositive motion filing date have passed.

This motion for summary judgment was filed on the last date for the filing of dispositive motions. Court trial is currently set for March 16, 1999. The court will not delay the revolution of this motion for summary judgment on the off-chance that plaintiff might be able to retain counsel to represent him.

ing machines which transfer molten gobs into molds. The bottles are then gradually cooled in an annealing lehr and placed on a conveyor system for final processing and packing for shipment by the Finished Product Maintenance Department. At the time of his termination on December 19, 1996, plaintiff was employed as an A.I.E./Finished Products Maintenance Journeyman in the Finished Products Maintenance Department. Ernest Talamantes was the supervisor of that department. The bottles undergo several processes in the Finished Products Maintenance Department. Initially the bottles are moved on the conveyor through the "AP–5 system" which coats the bottles with a vapor as the bottles pass under the AP–5 Hood. The purpose of the coating process is to keep the bottles from scuffing and marking as they are moved on the conveyor lined up next to each other. The AP–5 system operates at a temperature of approximately 350 degrees Fahrenheit. After the bottles are coated, they are moved through the "White Top Dauber System" which marks bottle tops with white paint and screens the bottles to identify and discard "gross" defective bottles. Plaintiff's responsibilities included maintenance and cleaning of the AP–5 System and the White Top Dauber System. Plaintiff also was responsible for making the adjustments necessary to adapt the systems whenever there was a change in the type of bottle being produced ('job change'). Different settings are required in the AP–5 and White Top Dauber systems for production of different types of bottles. When there are job changes it is critical that the AP–5 and White Top Dauber systems are adapted correctly and in a timely fashion to prevent delays and defects in the production process. If plaintiff did not timely prepare these systems to coat and mark bottles as they moved on the conveyor, the bottles have to be discarded as defective, thus resulting in production losses.

On December 12, 1996, plaintiff placed a plastic bucket of flammable solvent on top of the AP–5 hood and left the bucket unattended for a period of time. This is an unsafe act. Because the AP–5 hood operates at approximately 350 degrees Fahrenheit, the plastic bucket melted, causing a fire to ignite. The fire required the efforts of several employees using fire extinguishers to extinguish the fire. The fire caused lost production time because of the contamination caused by fire, solvents, and fire retardant chemicals. The fire also caused production losses on December 13, 1996 because of equipment malfunction resulting from fire-damaged wires which "shorted out".

Prior to this fire, plaintiff's work performance had been discussed with him on a number of occasions. On March 22, 1996, representatives of management and the union met with plaintiff to discuss plaintiff's job performance, including his failure to complete assignments in a timely manner and to perform at the level of a skilled journeyman of his experience. Following this March 22, 1996 meeting, plaintiff filed a request for grievance, claiming discrimination against plaintiff "due to personality conflict and industrial accident." The industrial accident referred to in the March 22, 1996 grievance occurred on November 18, 1995. Plaintiff strained his back in a work related injury for which he has received workers' compensation benefits, including medical care and disability payments. Madera Glass also provided plaintiff with "light duty" as needed. Plaintiff has been offered vocational rehabilitation through the workers' compensation benefit system. In his response to plaintiff's grievance, Talamantes assured that if plaintiff "does his job to the requirements of this department, there will be no future problems for him in any of these matters." The union took no further action in connection with plaintiff's March 22, 1996 grievance.

On July 19, 1996, representatives of management and the union again met with plaintiff to discuss his continued failure to perform his job in a timely manner and at the level of a skilled journeyman.

As a general plant maintenance journeyman, plaintiff was subject to the Union Shop Contract entered into between Madera Glass and the union, effective as of May 1, 1996 and expiring on April 30, 1999. Madera Glass complied with all aspects of the Union Shop Contract in the discipline of plaintiff following the unsafe conduct that caused the fire on December 12, 1996. As required by the contract, on December 13, 1996 plaintiff was initially placed on a 3–day suspension pend-

ing termination. An employee conference was subsequently held on December 18, 1996 to review the offense and the facts concerning his case with plaintiff, Human Resources Manager Richard Pelisari, Assistant Plant Manager Jaime Navarro, and union president Frank Persa. Following the employee conference, it was decided to terminate plaintiff's employment. By letter dated December 19, 1996, plaintiff was advised by Mr. Pelisari that plaintiff was terminated for work performance effective December 19, 1996, having been previously advised on July 19, 19976 and March 22, 1996.

### C. *First Cause of Action.*

#### 1. *Breach of Contract.*

As noted, the First Cause of Action alleges that plaintiff's termination was in breach of contract.

■ In moving for summary judgment, Madera Glass notes that the Union Shop Contract provides that Madera Glass has the right to terminate employees for "just cause" in accordance with the procedures set forth in the Union Shop Contract. As further noted above, Madera Glass complied with the contractual procedures prior to the termination of plaintiff's employment.

Thus, the issue with respect to this cause of action is whether plaintiff was terminated for "good cause". From the record before the court, defendant is entitled to summary judgment that plaintiff was so terminated. Plaintiff provides no evidence raising an issue of fact that plaintiff was not terminated for the reasons asserted by Madera Glass, i.e., poor job performance after at least two warnings and the causing of the fire on December 12, 1996. In his written opposition to this motion, plaintiff asserts that his employment "was terminated from a conspiracy that formed [sic] by management employees after Plaintiff injured himself during the course of employment." Plaintiff has presented no evidence from which even an inference of such a conspiracy can be gleaned. Plaintiff's contention is based on his belief that such a conspiracy must exist because of the number of criticisms of his job performances following the injury and the fact that the injury occurred approximately one year prior to his termination. This is not a sufficient basis

upon which to rest such a claim. Moreover, plaintiff does not deny that his actions caused the fire to start. While he complains that other employees started similar fires and were not terminated, he presents no evidence in support of this assertion and provides no foundation underlying his ability to so assert. Moreover, it should be noted that Madera Glass actually terminated plaintiff in September, 1996 because of a claimed theft by plaintiff of company property. However, on its own initiative Madera Glass converted that termination several days later to a final warning.

Therefore, the court concludes that defendant is entitled to summary judgment with respect to the claim in the First Cause of Action that plaintiff's termination was in breach of contract.

#### 2. *Americans with Disabilities Act.*

As noted, paragraph 8 of the First Cause of Action includes the allegation that "Defendants knew of Plaintiff's disability and made no reasonable accommodation for Plaintiff under the Americans with Disabilities Act".

■ To the extent that plaintiff is attempting to state a claim for relief pursuant to the Americans with Disabilities Act, Madera Glass correctly contends that it is entitled to summary judgment because of plaintiff's failure to exhaust administrative remedies.

It is not and cannot be contested by plaintiff that he is required by the ADA to exhaust his administrative remedies with respect to his ADA claim prior to seeking relief from this court. Plaintiff implies that his failure to do so should be excused because "Plaintiff was without Counsel and consequently unaware administrative remedies [sic] under A.D.A."

However, Madera Glass presents the supplemental declaration of Mr. Pelisari in which he avers in pertinent part:

18. Madera Glass at all times relevant to this lawsuit has posted on the bulletin board located near the employee time clock, State of California and Federally mandated posters concerning equal employment opportunity laws. The EEOC PE/1 poster directs employees who feel

they have been discriminated against in violation of the Americans with Disabilities Act, among other laws, to 'immediately' contact the Equal Employment Opportunity Commission and lists a toll free number to call for assistance. The state mandated poster DFEH 162 directs employees who believe they have experienced discrimination, including disability discrimination, to file a complaint with the DFEH and lists a toll free number to call for assistance.

In addition, Madera Glass refers the court to letters written by counsel for plaintiff in October, 1996 in which counsel advises that plaintiff may file an action against Madera Glass under the ADA if a final notice of discipline is not removed from plaintiff's personnel file. Finally, Madera notes that plaintiff could have obtained the information necessary to timely file the administrative claim with the EEOC from the union of which he was a former president. Therefore, the court concludes that plaintiff's implied argument that his failure to exhaust administrative remedies should be excused because he was without counsel cannot withstand this motion for summary judgment. Plaintiff does not dispute that the information concerning the administrative remedies was made available to him by his employer and that he had access to this information through the union. That plaintiff did not have counsel representing him does not excuse his own failure to familiarize himself with the legal prerequisites to an action under the American with Disabilities Act. In this regard, plaintiff is no different than many of the litigants representing themselves in ADA cases pending in this court.

Consequently, defendant is entitled to summary judgment to the extent that the First Cause of Action purports to allege a violation of the Americans with Disabilities Act.

### D. Second Cause of Action.

As noted, the Second Cause of Action alleges that plaintiff's termination was in retaliation for the filing of a worker's compensation claim in violation of California Labor Code § 132a.

Madera Glass moves for summary judgment on the ground that the exclusive forum for an alleged violation of Section 132a is the California workers' compensation appeals board.

In *City of Moorpark v. Superior Court,* 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998), the California Supreme Court holds that Section 132a is not an exclusive remedy. However, in the course of so holding, the Supreme Court commented that "Labor Code section 5300 merely establishes the Workers' Compensation Appeals Board as the exclusive *forum* for pursuing a section 132a claim; it does not establish that the section 132a claim is the employee's exclusive remedy." *Id.* at 1156, 77 Cal.Rptr.2d 445, 959 P.2d 752.

Relying on this language, Madera Glass refers the court to the undisputed fact that plaintiff has filed and is in the process of litigating his claim of discrimination in violation of Section 132a before the Workers' Compensation Appeals Board in Case No. FRE 157449. Therefore, Madera Glass argues, the court should grant it summary judgment on this cause of action.

Plaintiff does not respond at all to this portion of the motion for summary judgment. Because of the wording of the Second Cause of Action, i.e., that plaintiff is attempting to allege a violation of Section 132a, the court concludes that defendant is entitled to summary judgment in connection with this cause of action.

Alternatively, defendant is entitled to summary judgment with respect to the Second Cause of Action because of the absence of any evidence from which it may be inferred that plaintiff was terminated in retaliation for the filing of his workers' compensation claim.

### E. Third Cause of Action.

As noted, the Third Cause of Action alleges that plaintiff's termination was in retaliation for the filing by plaintiff of a grievance with his union on March 22, 1996.

In moving for summary judgment in connection with this cause of action, Madera Glass refers the court to the deposition testimony by plaintiff:

Q. Do you have any reason to believe that your termination was based on your

having filed this grievance on March 22, 1996?

A. No. It was obvious prior to that.

· · · · ·

Q. What are the facts that you believe support your claim that their desire to terminate you had anything to do with filing a grievance?

A. I didn't say that.

· · · · ·

Q. What action did Richard Pelisari take that made you believe that your termination was in retaliation for filing a grievance?

A. Nothing.

· · · · ·

Q. What action did [Assistant Plant Manager] Jaime Navarro take to make you believe that your termination was in retaliation for filing a grievance?

A. Nothing, except being part of the conspiracy. And that would be the same for Pelisari too.

Q. What about [Finished Products Manager] Paul Lin?

A. Same.

Defendant further refers the court to plaintiff's deposition testimony that he had filed a number of other grievances and had not been terminated for filing them and that he knew of no other employees who had been terminated for filing grievances.

Plaintiff does not present any evidence or argument in opposition to this portion of defendant's motion. Plaintiff's own deposition testimony makes clear that defendant is entitled to summary judgment in connection with this cause of action and the court so rules.

ACCORDINGLY, IT IS ORDERED that this action is dismissed with prejudice against defendant Ernie Talamantes and Does 1–100.

IT IS FURTHER ORDERED that defendant Madera Glass Company's Motion for Summary Judgment is granted.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

The court hereby denies plaintiff's Request for Reconsideration filed on December 30, 1998.