Filed 4/2/14  Fussell v. Timec CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GARY FUSSELL, | B242823 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC024635) |
| v. | |
| TIMEC COMPANY, INC., | **ORDER MODIFYING OPINION AND DENYING REHEARING (NO CHANGE IN JUDGMENT)** |
| Defendant and Respondent. | |

THE COURT:

It is ordered that the opinion filed here on March 3, 2014 be modified as follows:

1.  On page 23, in the first paragraph under the heading Basic Legal Principles, strike "retaliation (§ 12940, subd. (h)),".

2.  On page 27, in the third full paragraph beginning with the words, "In support of his disability discrimination cause of action," through the first five lines on page 28, eliminate the added italics and strike "(Italics added.)"  from the two places where it appears in that paragraph.

3.  On page 28, the first full paragraph is revised to read as follows (striking the paragraph as written and replacing it with):  In other words, while it is true Fussell specifically alleged discrimination on the basis of his physical disability arising out of his termination on November 2, 2009, he also expressly and repeatedly alleged Timec's actions from October 29, 2009 forward demonstrated Timec had discriminated against him based not only on his disability but also on his request for an accommodation. Because of these additional allegations, Timec's assertion Fussell cannot present evidence he was "qualified" to work as a pipefitter/fabricator is irrelevant.

4.  On page 28, the second new paragraph that begins "A plaintiff may pursue a discrimination claim . . ."and ends on page 29 with the citation to "(Code Civ. Proc., § 437c, subd. (p)(2).)" is deleted.

5.  On page 29, footnote 16 is renumbered to become footnote 15.

Respondent's petition for hearing is denied.  There is no change in the judgment.

| PERLUSS, P. J. | WOODS, J. | SEGAL, J.[*] |

[*]      Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GARY FUSSELL, | B242823 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC024635) |
| v. | |
| TIMEC COMPANY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Lynn D. Olson, Judge. Reversed.

Purcell Law and Chris Purcell for Plaintiff and Appellant.

Littler Mendelson, Lindbergh Porter and Oswald B. Cousins for Defendant and Respondent.

_____

## INTRODUCTION

The plaintiff filed a complaint alleging claims for disability discrimination and failure to accommodate. Later, over plaintiff's opposition, the trial court granted the defendant employer's motion for summary judgment. The plaintiff appeals. We reverse.

## FACTUAL AND PROCEDURAL SUMMARY

In September 2010, Gary Fussell filed a complaint against Timec Company, Inc. (Timec), asserting causes of action for (1) disability discrimination and (2) failure to accommodate disability.[1] According to Fussell's complaint, he worked as a pipe fabricator at Timec's operations in Los Angeles County for about a year before his employment ended on November 2, 2009. According to Timec's website, Fussell alleged, Timec is the leading provider of asset management, maintenance, turnaround, and small project services to the refining, oil and gas, mining, minerals processing, petrochemical and food industries. Timec's "turnaround" services for the oil industry help refiners (such as Chevron) maintain and improve the efficiency and operations at their refineries.

As stated on Timec's website, Fussell noted, "Timec has established a reputation as an exemplary turnaround service provider with multiple disciplines executed simultaneously during shutdown periods. . . ." Timec's website claimed that "[f]or the most efficient and well-managed turnaround solutions, companies consistently turn to Timec due to its extensive experience, outstanding safety performance and unparalleled results."

At all relevant times, Fussell alleged, he suffered from a physical disability that required him to wear a leg brace on his left leg. He "never concealed" this disability, and Timec hired him to perform turnaround work it was handling for Chevron at its El

---

[1] Fussell alleged a third cause of action for negligence against Chevron U.S.A., but that claim is not at issue in this appeal.

Segundo refinery. His duties often required Fussell to work on scaffolding or other equipment at some distance above the ground. According to the complaint, Fussell performed his duties wearing his leg brace, and the leg brace did not limit his ability to work as a pipe fabricator. He was an exemplary employee, he alleged, receiving "5's" except for one 4 on a scale of 1-5 on his performance reviews.

On October 27, 2009, Fussell alleged, his leg brace broke and was then unusable. He immediately ordered a replacement from the brace manufacturer but was informed he would not receive the replacement *for several days*. He reported to work as scheduled the following day (October 28). He told his Timec supervisor his leg brace had broken and asked if he could be given "ground duty," meaning work that did not require him to climb scaffolding or work above ground level, until his replacement brace arrived. Fussell was qualified to perform many types of ground duty for Timec, including but not limited to working in the machine shop. Fussell alleged Timec did not make a good faith effort to ascertain whether ground duty existed that he was qualified to perform until his brace arrived. He was told there was no work for him that day that did not involve working above ground level.

Fussell alleged he reported for work again on October 29 and again asked if he could be given work at ground level. He still had not received his leg brace. His supervisor again said the only jobs available for him that day required that he climb scaffolding and work off the ground. Again, Fussell alleged Timec did not make a good faith effort to ascertain whether ground duty existed that he was qualified to perform until his brace arrived. Because he believed he would not be paid if he did not work, he decided to attempt to work on the scaffolding. While working on the scaffolding, much of which was covered with oil and was extremely slippery, Fussell alleged he slipped and fell about 8 to 12 feet, landing on his back and suffering injuries. He saw a doctor and was referred for an MRI. On October 30, Brad Glass, a Timec executive whose responsibilities included safety standards and practices at the Chevron refinery turnaround, authorized Fussell's MRI, and it revealed significant back injuries.

3

On October 31, Fussell spoke with Glass about the results of his medical and exam and said he would be filing a Worker's Compensation claim because of his injuries. Glass told Fussell not to come to work the following day (November 1), indicating the crew would not be working that day (a Sunday). Fussell also spoke with Bill Savoy, a Timec Vice President who was in charge of operations at the Carson site, who told Fussell: "'[I]f I had known you wore a leg brace, you would never have been working for me' at Timec." On November 1, contrary to what Glass had told him, Fussell learned the Timec crew did in fact work that day.

Although he was in pain from the injuries he suffered in the October 29 fall, Fussell said he returned to work on November 2, intending to request ground duty. He saw Glass and asked Glass why he had lied about the crew not working the day before. Glass did not answer the question but told Fussell to wait in the office. Shortly thereafter, Fussell was told he was being terminated, effective immediately. He was then asked to sign a "Job Complete" form. The purpose of such a form was to indicate Fussell was being terminated because the work he had been hired to perform had been completed, but that representation was false. Timec pressured Fussell to sign the form by indicating his medical benefits would be in jeopardy if he did not sign the form. On information and belief, Fussell alleged (1) Timec pressured him to sign the form so it could claim he was no longer working on the Chevron turnaround because his job was completed and not because he was injured in an accident on the job; and (2) Timec intended to use the signed "Job Complete" form to justify not reporting Fussell's accident to Chevron because, if reported, it would have to be considered a "lost time" accident which could adversely affect Timec's standing with Chevron. Because he was under duress and in fear of losing his benefits, Fussell signed the Job Complete form. Before leaving the El Segundo facility that day, Fussell asked to speak with a Chevron representative. Timec informed him he was not allowed to speak to anyone from Chevron. A security guard escorted him to his vehicle and ordered to wait there for his termination papers.

4

Fussell alleged Timec terminated him on the basis of his disability *and in retaliation for his request for accommodation because of that disability* and in retaliation for his stated intention to file a workers compensation claim, in violation of the Fair Employment and Housing Act (FEHA, Gov. Code § 12940 et seq.), and to keep him from reporting his accident to Chevron. Fussell said Timec's actions "in wrongfully terminating [him], *and otherwise discriminating against him, as alleged above*," were a substantial factor in causing his various damages. (Italics added.) As a further direct and proximate result of the "aforesaid acts of discrimination on the basis of Fussell's physical disability by [Timec]," Fussell had to employ doctors, mental health care providers and other medical personnel to examine treat and care for him. (Fussell alleged he had filed a complaint with the Department of Fair Employment and Housing (DFEH) alleging he "had *suffered discrimination and was terminated, on the basis of his disability as described hereinabove, and was harassed and was denied an accommodation for his physical disability, [and was] retaliated [against] for requesting an accommodation*," and subsequently received a right-to-sue notice.) (Italics added.)

*From on or about October 28, 2009*, Fussell further alleged, *Timec discriminated against him* and harassed him on the basis of his physical disability by conduct including but not limited to refusing to make any attempt to accommodate his physical disability and then terminating him from his employment while he was temporarily unable to perform his duties, in violation of his rights and without any legitimate business purpose or reason.

Timec answered, conducted discovery and later filed a motion for summary judgment or adjudication. In its notice of motion, Timec asserted it was entitled to summary adjudication of Fussell's first cause of action for disability discrimination because (1) "it is undisputed that Fussell was not qualified to work as a Pipefitter/Fabricator *at the time of his alleged termination* and therefore cannot make a prima facie case of disability discrimination[;]" and (2) "it is undisputed that Fussell was laid off for a legitimate non-discriminatory reasons and there is no evidence of pretext." (Italics added.) Timec claimed entitlement to summary adjudication of Fussell's second

cause of action for failure to accommodate because (1) "it is undisputed that Timec did offer Fussell a reasonable accommodation for his alleged disability[;]" and (2) "it is preempted by Workers Compensation Exclusivity."[2]

Fussell opposed Timec's motion. He said Timec's first argument (that Fussell had no claim for disability discrimination because he was unqualified to work as a pipefitter at the time of his termination) was disingenuous because Timec ignored the fact Fussell had been *injured because of Timec's refusal to accommodate his temporary disability which caused his long-term disability*. Similarly, Timec's second argument (that Fussell was laid off for a legitimate non-discriminatory reason) was flawed given the fact Fussell was terminated and not laid off. As for his second cause of action for failure to accommodate his physical disability, Fussell cited to evidence that he could have performed "ground work" but was not permitted to do so, and that in the construction industry, telling Fussell he could either go work up on the scaffolding or "go home" was not an offer of an accommodation but rather a threat to his job and again, because Timec's failure to accommodate his disability had caused his injury, workers compensation exclusivity did not bar his claim.

---

[2] Timec had also argued it was entitled to summary *judgment* of both Fussell's first and second causes of action because he failed to exhaust his administrative remedies under the applicable collective bargaining agreement. However, in opposing Timec's motion, Fussell presented evidence, including testimony from Timec's own employees suggesting the job was not a "union job" and no collective bargaining agreement applied. In addition, Fussell noted the agreement Timec submitted specified that any arbitration award entered as a result of the grievance procedure was nonbinding on the company. The trial court did not address this argument, and Timec has not reasserted it on appeal.

*Timec's Evidence That Fussell Was Not Qualified to Work as a Pipefitter/Fabricator in Support of Its Motion for Summary Adjudication of Fussell's First Cause of Action for Disability Discrimination.*

Timec presented the following undisputed evidence in support of its claim it was entitled to "summary judgment" (adjudication) of Fussell's first cause of action for disability discrimination because "Fussell was not qualified to work as a Pipefitter/Fabricator *at the time of his alleged termination* and therefore cannot make a prima facie case of disability discrimination[:]" Fussell's duties as Pipefitter/Fabricator were following blueprints for piping layouts and calculating the necessary piping, fabricating and laying out pipes, demolishing piping, fitting up and installing various piping systems, welding, and assisting other workers or helpers; the job is very physically demanding, requiring that the worker be capable of working in a fast-paced environment, working outdoors in all conditions, bending, squatting and kneeling to access tight situations; climbing ladders and scaffolds and working at heights; Fussell claimed he fell on October 29, 2009, injuring his back; he was treated at an on-site clinic and then went to an off-site clinic in Long Beach for x-rays; he spent the remainder of the day either getting medical treatment or at home; he experienced both dull and sharp pain, especially if he twisted or bent down and was sore and bruised; he could not have performed Pipefitter/Fabricator duties on October 29, October 30, October 31, or November 1, 2009, or any day thereafter, and his doctors have told him he cannot perform any type of work, including light duty work, and he has not been cleared to return to work at all.[3]

*Timec's Evidence Fussell Was Laid Off for Legitimate Non-Discriminatory Reasons (and There Is No Evidence of Pretext) in Support of Its Motion for Summary Adjudication of Fussell's First Cause of Action for Disability Discrimination.*

Timec presented evidence it had policies in place prohibiting discrimination against employees with disabilities and set forth procedures for providing reasonable

---

[3] Fussell added that Timec told him not to report for work on November 1, 2009.

7

accommodations for employees with disabilities; turnarounds are staffed seven days a week; Timec works with the customer to determine what type of work needs to be done, what types and levels of skilled workers will be needed and how many people will be needed at various stages of the project, starting with a relatively small crew and adding workers until it reaches a peak, continuously reviewing and evaluating manpower needs throughout the project; Fussell had worked as a pipefitter or fabricator in the oil industry since finishing high school in 1998; from 2000 until 2009, Fussell moved around between jobs and employers and refineries around the country; many of his prior jobs were turnarounds that were temporary and varied in length (from weeks to months); when Timec hired him in 2009, Fussell signed an "Employment Clarification" that stated work was temporary and depended on the client's needs such that no position was permanent and assignments were often for a short duration; Fussell was hired to work as a fabricator or pipefitter ("generally the same thing"); on October 26, Timec laid off nine employees from the Chevron project, including four with Fussell's job title (Fabricator 2) and two Fabricator 1 workers; on October 28, another seven were released; on November 1, 38 employees were let go from the Chevron job, including 15 other Fabricator 2 workers and 6 Fabricator 1 workers; and laid off employees were still considered employed and eligible for reassignment if and when they were interested and able to work again.

Timec also said it was undisputed that Fussell was laid off—not terminated—from his Chevron assignment on November 2, 2009, as part of a reduction in force, despite the fact (Timec superintendent) Tracy Shirley "erroneously stated 'job completion' (code "03") as the reason," stating as a further undisputed fact that "Shirley appears not to have understood the distinction between the '01-Reduction in Force' reason and the '03-Job Complete' reason."

In opposing Timec's motion in this regard (and in addition to objecting to Timec's characterization of Shirley's actions, knowledge and intentions as speculative, lacking personal knowledge and lacking foundation), Fussell responded with evidence he said established he was fired, and not laid off. Not only did the form on which Timec relied shows that Shirley wrote the words "Job Complete" and therefore did not simply make a

8

coding mistake as Timec claimed, but Fussell had also testified at his deposition that when he objected to signing the form and questioned Shirley about the reason given, Shirley told him "[his] job was over[;]" Shirley specifically stated, "'Because your job's completed.'" Moreover, as further evidence he was fired (and not laid off), Fussell cited his deposition testimony that, after he was injured, Timec Vice President Bill Savoy asked him what happened, and Fussell told him "[his] leg brace was broke at the time," and because he had picked the brace up that Friday, showed it to him, saying, "This is my AFO [ankle foot orthotic (AFO)—the leg brace Fussell wore]." Fussell testified Savoy looked at it and said, "'Well, if I known you was handicapped [sic], you wouldn't be working for me.'"

*Timec's Additional Undisputed Evidence Timec Did Offer Fussell a Reasonable Accommodation in Support of Its Motion for Summary Adjudication of Fussell's Second Cause of Action for Failure to Accommodate.*

Before working for Timec, Fussell had suffered a workplace injury in 2008 which resulted in a condition called compartment syndrome which caused "drop foot" in his left leg; consequently, he wore an AFO for this condition. When he interviewed for a position with Timec, recruiter Alex Perez noticed and asked about the orthotic, and Fussell told him what it was. He did not ask for any accommodations. When Fussell was hired for the Chevron turnaround, he was assigned to a crew responsible for demolishing and replacing a very long water pipe that was more than 20 feet above ground, and workers had to climb scaffolds and ladders to access it. When Fussell's AFO broke on October 25, 2009, he took it to the manufacturer for repair. Fussell's supervisor Tracy Shirley was helpful (Fussell's response included a reference to his deposition testimony that Shirley first attempted (unsuccessfully) to repair the AFO himself), and he allowed Fussell to work in the tool room handing out tools (which was not skilled work) for the rest of the day on October 25, October 26 and October 27. On October 28, Shirley told Fussell he could no longer work in the tool room and needed to get out in the field. Fussell told Shirley his AFO was not fixed yet and asked if there was any ground-level work he could do. Shirley told Fussell to ask the foreman if there was any such work, the

9

foreman said there was not, and Shirley told Fussell, "Well, you can go work up in the racks or you can go home." Fussell worked on the scaffolding and pipe rack without incident that day. The next day (October 29), Fussell's AFO was not fixed yet, but Fussell worked on the pipe again "because he had a family to support."[4]

In opposing Timec's motion as to this issue, Fussell pointed to his deposition testimony that when Shirley said "Go home," it was a "construction term," a "general term" that meant "Pack your stuff up and go home." Fussell testified Shirley "had an attitude," was "being snappy; and just by the way he said if I didn't get over there and do what they had work to be done [sic], to go home;" Fussell understood Shirley to mean "he was threatened for his job." Fussell noted Timec's counsel had specifically asked him at this deposition: "If he [Shirley] had said, 'Look, you can take a couple days off of work without pay and come back in here when your AFO is ready,' would you have done that?" Fussell answered: "I would have done that."[5] Timec's counsel then asked Fussell: "Isn't it possible that's what he was suggesting you do when he told you to go home?" Fussell responded: "No," and went on to describe Shirley's "attitude" and manner when the two men spoke.

*Timec's Additional Undisputed Evidence in Support of Its Motion for Summary Adjudication of Fussell's Second Cause of Action for Failure to Accommodate Based on Workers Compensation Exclusivity.*

Fussell testified that while he was working on October 28, 2009, he observed a large amount of oil on the scaffolding where he was supposed to work the next day. It was "very visible" and could be seen from the ground. He "wasn't surprised" given that

---

[4] Timec also cited deposition testimony from its Human Resources Manager (Susan Moats), stating Shirley did not have the authority to terminate Fussell. In response, Fussell cited Shirley's deposition testimony, stating he "was with everybody that gets released by Timec," as he ("or Pete") "had to sign the paperwork."

[5] According to the record, Fussell's AFO was ready on October 30, 2009 (the day after his injury at Chevron).

10

he was working at an oil refinery. He testified he was "concerned" the oil would be dangerous for him and there would be a "risk" he would "lose [his] footing" and fall from the scaffolding. Earlier in the day on October 29, Fussell climbed the scaffold to where the oil was to look over the job they were to do. He worked on the pipe despite his concerns because "I've got a family to support." That day, as he was climbing onto the pipe from the scaffold, Fussell slipped and fell about four feet and landed on his back, wedged between two pipes. He testified his fall was most likely caused by slipping on oil rather than the fact he did not have his AFO, and he told people after his fall he had slipped on oil. Fussell filed a workers compensation claim relating to his October 29, 2009 injury and has received workers compensation benefits for his injury at Timec.

In opposition, Fussell again referred to his testimony he believed he was faced with a choice between working on the scaffold or being fired if he did not work on the pipe. Also, he referred to his deposition testimony when he was asked to describe how he was injured: He testified he "really didn't know," but said he "remember[ed:]" "I led with my left foot [the injured one], swung my right foot over to go down; and then next thing you know I slipped." Pressed further as to whether he had a "specific recollection" that his right leg was the one that had slipped, he responded: "My left leg." The "leg that was on the scaffolding" was his left leg. He led with his left leg. The "last foot that was on the scaffolding" was his "[l]eft leg."

Fussell added evidence that after he was diagnosed with compartment syndrome, he wore his AFO to provide stability for his left leg and ankle to prevent fluid from collecting and causing swelling; he "d[id]n't really have much feeling" in parts of his left leg.

After hearing argument, the trial court read its tentative ruling into the record, indicating it would become the court's order.[6] The written order ultimately executed by

---

[6] In his Reply Brief, Fussell says there are discrepancies between the trial court's actual ruling as set forth in the reporter's transcript and the order Timec's counsel

11

the court reads as follows:  "The defendant's opposed motion for summary judgment is granted.

"Plaintiff was injured while working as a pipefitter at a refinery on a turnaround assignment.  Plaintiff slipped and fell from a scaffold, resulting in injuries.  His employment was terminated shortly thereafter.  *According to plaintiff*, at the time of the incident, defendant knew that plaintiff, who has compartment syndrome, was not wearing his ankle orthotic.

"Defendant provides evidence that the plaintiff's fall and injury was caused by oil on the work surface, not by the lack of the ankle orthotic.  Plaintiff testified that the slip and fall was caused by the oily surface.  (See deposition at 141:15-22 and 149:20-150:21.)  *He also testified that he* told others that he had slipped on oil.  (See deposition at 91:14-20.)

"Plaintiff provides no *admissible* evidence indicating that the lack of the ankle orthotic caused his fall.  At best, [p]laintiff offers testimony that he did not know whether the lack of an orthotic could have contributed to his fall.  (Depo 145:5-24.)  This testimony precedes the much clearer testimony on page 150 of the deposition that he believes the oil was the cause.  As the undisputed evidence indicates that the oil, and not the failure to accommodate the disability was the cause of plaintiff's injury and damages, plaintiff's causes of action are barred by the Worker's Compensation exclusivity rule.

---

prepared, emphasizing that the order Timec drafted included evidentiary rulings the trial court never made.  (The changes evident in the written order (additions, when compared to the court's ruling as set forth in the reporter's transcript) are italicized in the text quoted above.)  According to the reporter's transcript, the trial court directed Timec (as the moving party) to prepare the order, and the order (as modified) bears the trial court's signature; Fussell does not identify and there is no indication of any objection made to the content of the written order in the trial court.  In its respondent's appendix, Timec has submitted a copy of a letter with the proposed order (as modified to include Timec's "unilateral[]" additions) as an attachment, requesting that Fussell communicate any objections, and indicating a failure to respond within five days will be deemed an approval, along with a FedEx delivery confirmation documenting receipt by Fussell's counsel on March 21, 2009—20 days before the trial court signed and filed the order (and Timec served it on Fussell).

*(Undisputed Facts 91-99, 101-104.)  The Court sustains defendant's objections to Exhibit H to the declaration of Chris Purcell* [the October 29, 2009 incident report Fussell's attorney said Timec had produced in discovery, in which Timec safety officer Brad Glass wrote Fussell normally wore an ankle brace to support his left ankle and foot but was not wearing it that day "which according to Fussell was why he lost his footing and slipped"] *and to the Declaration of Jerry Hildreth* [Fussell's safety expert] *and notes that such evidence was not cited in response to Undisputed Facts 91-99, 101-104.*[7]

"*Finally,* the undisputed evidence indicates that as of the date when plaintiff's employment was terminated, plaintiff was no longer a qualified employee.  He no longer could (and he still cannot) perform essential job duties.  *(Undisputed Facts 10-22).*"

Fussell appeals from the judgment subsequently entered.

### DISCUSSION

Regarding his cause of action for failure to accommodate, Fussell says triable issues of fact exist as to (1) Timec's efforts in the interactive process and (2) the adequacy of the accommodation Timec allowed for Fussell's known disability; as to his disability discrimination cause of action, Fussell says triable issues exist as to whether (1) he was fired because of his disability, (2) whether he was a qualified individual and (3) whether he was precluded from work.  In addition, he says neither worker's compensation exclusivity nor the collective bargaining agreement bar either of his causes of action.[8]

---

[7]     We conclude the judgment is properly reversed without consideration of any purportedly excluded evidence but note that Timec itself presented evidence acknowledging Fussell had identified the absence of his AFO as causing his injury (in answering Savoy, for example, and leading to Savoy's alleged statement he would never have hired Fussell had he known of his disability).  (And see *Levy-Zentner Co. v. Southern Pac. Transp. Co.* (1977) 74 Cal.App.3d 762, 784 [finding admissible employer's incident report including employee's documentation of plaintiff's stated cause of injury].)

*Standard of Review*

"We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law." (*Raine v. City of Burbank* (2006), 135 Cal.App.4th 1215, 1221 (*Raine*), citing *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; Code Civ. Proc., § 437c, subd. (c).)

*FEHA's Accommodation Requirements*

As we noted in *Raine*, *supra*, 135 Cal.App.4th 1215, "The California Fair Employment Practice Act (former Lab. Code, § 1410 et seq.) enacted in 1959 and recodified and included in FEHA in 1980 (Stat. 1980, ch. 992, § 4, p. 3140 et seq.) established that freedom from discrimination in employment on specific grounds, including disability, is a civil right and that such discrimination violates public policy. (See *Peralta Community College Dist. v. Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 44 [276 Cal. Rptr. 114, 801 P.2d 357]; *Dyna-Med, Inc. v. Fair Employment &*

---

[8] Ordinarily, union members seeking redress for disputes within the scope of their collective bargaining agreement (CBA) must follow the grievance procedures to which the employer and the union have agreed, but collectively-bargained grievance procedures need not be exhausted in certain cases, including an employee's statutory discrimination claims against the employer, unless the CBA contains a "clear and unmistakable" waiver of the right to sue on such claims. (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2012) ¶¶ 16:345 to 16:359, pp. 16-52 to 16-54; and see *Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1085 [addressing FEHA claim].) Here, according to the CBA Timec sought to enforce, any arbitration would be "non-binding" (and the remaining CBA pages Timec cited in support of its motion in the trial court—pages 23 and 24 of "Article Thirteen—Grievance and Arbitration Procedure" were not provided in the record). Although Fussell addressed Timec's collective bargaining argument in his opening brief, Timec (like the trial court) has ignored it. Accordingly, leaving to one side any factual dispute regarding the application of the CBA to Fussell's employment in the first instance, it appears Timec has abandoned its argument it was entitled to summary judgment on the basis of Fussell's failure to exhaust collective bargaining grievance procedures, the record does not contain evidence in support of such an argument, and Timec was not entitled to summary judgment on this ground under the applicable law in any event.

14

*Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal. Rptr. 67, 743 P.2d 1323].) In 1992 the Legislature amended FEHA to incorporate as part of state law the protections adopted by Congress in the federal ADA.[9]

"As currently written FEHA prohibits as an unlawful employment practice, unless based upon a bona fide occupational qualification, the discharge of an employee because of the employee's physical disability (§ 12940, subd. (a)) except when the employee's disability renders the employee 'unable to perform his or her essential duties[10] even with reasonable accommodations . . . .' (§ 12940, subd. (a)(1); see *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1160 [77 Cal. Rptr. 2d 445, 959 P.2d 752] [FEHA recognizes the fact employer may have valid reasons to treat disabled employees differently from nondisabled employees if the disabled employee is unable to perform essential duties even with reasonable accommodation].) It is also unlawful, and separately actionable under FEHA, for an employer 'to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee' unless the accommodation would cause 'undue hardship' to the employer. (§ 12940, subd. (m); see *Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1383 [96 Cal. Rptr. 2d 236] (*Spitzer*).)

"Generally, '"[t]he employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations. . . . [¶] . . . The employee, of course, retains a duty to cooperate with the employer's efforts by explaining [his or] her

---

9        "The Legislature declared its intent 'to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990.' (Stats. 1992, ch. 913, § 1, p. 4282.)" (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222, fn. 3.)

10        "'Essential duties' means the 'fundamental job duties of the employment position the individual with a disability holds or desires.' (§ 12926, subd. (f).)" (*Raine, supra,* 135 Cal.App.4th at p. 1222, fn. 4.)

15

disability and qualifications.  [Citation.]  Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employer's capabilities and available positions.' [Citation.]'  (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950 [62 Cal. Rptr. 2d 142].)"  (*Raine, supra,* 135 Cal.App.4th at pp. 1221-1222.)

### *A Triable Issue of Material Fact Exists as to Whether Timec Offered Fussell a Reasonable Accommodation.*

Timec does not dispute that it knew of Fussell's disability (compartment syndrome or "drop foot") for which he wore his AFO.  Indeed, Timec's recruiter (Perez) testified that he noticed Fussell's limp, discussed it with Fussell who showed Perez his AFO and Fussell told Perez he could perform all job responsibilities as long as he wore the brace. Furthermore, Timec knew Fussell's AFO had broken as Fussell's supervisor (Shirley) attempted to fix it but was unsuccessful, and Fussell then took it to the manufacturer for repair.  Because Timec had notice of Fussell's disability and resulting need for his AFO, such notice triggered Timec's burden to take "positive steps" to accommodate Fussell's limitations.  (*Prilliman, supra,* 53 Cal.App.4th at p. 950 ["Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employer's capabilities and available positions"].)

Here, Timec assigned Fussell to work in the tool room for the remainder of the day on October 25, October 26 and October 27.  On October 28, however, according to Fussell's testimony, Shirley told Fussell he could no longer work in the tool room and needed to get out in the field.  According to Fussell's deposition testimony, although Fussell told Shirley his brace was not ready yet and asked for ground work, Shirley told Fussell:  "[Y]ou can go work up in the racks or you can go home."  Fussell further testified, based on the change in Shirley's "attitude"—like he was "ticked off"—and Fussell's understanding of "go home" as a "general" "construction term" meaning "Pack your stuff and go home," Fussell understood Shirley to mean "he was threatened for his

16

job" if he "didn't get over there and do what they had work to be done [sic]."

Timec argued that Shirley's statements could only mean Timec offered Fussell the option of going home until his brace was repaired, and that doing so was a "reasonable accommodation." It is true that "FEHA does not obligate an employer to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks. (*Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 228 [87 Cal. Rptr. 2d 487].) It requires only that the accommodation chosen be 'reasonable.' (§ 12940, subds. (a) & (m).) Although FEHA does not define what constitutes 'reasonable accommodation' in every instance, examples provided in the statute itself and the regulations governing its implementation include job restructuring, part-time or modified work schedules or 'reassignment to a vacant position.' (§ 12926, subd. (n)(2); Cal. Code Regs., tit. 2, § 7293.9, subd. (a)(2); see also *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 266 [102 Cal. Rptr. 2d 55] (*Jensen*).)" (*Raine, supra,* 135 Cal.App.4th at p. 1222.)

"The question of reasonable accommodation is ordinarily a question of fact . . . ." (*Raine, supra,* 135 Cal.App.4th at p. 1227, fn. 11; *Bell v. Wells Fargo Bank* (1998) 62 Cal.App.4th 1382, 1389.) On this record, although a jury could believe Timec's assertion that Shirley offered Fussell the option of going home but Fussell chose to work on the scaffolding without it because he did not want to lose money (see *Jensen, supra,* 85 Cal.App.4th at p. 263 ["Holding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able to return to an existing position at some time in the foreseeable future. [Citation.]"]), a jury could also conclude (as Fussell maintains) Shirley's comments communicated to Fussell that his only options were to climb the scaffolding and work above ground without his AFO or lose his job. In fact, Timec's own separate statement acknowledges and relies upon Fussell's testimony that on October 28, 2009, Shirley told Fussell he could no longer work in the tool room and needed to be out in the field—with full knowledge that Fussell's AFO was still not fixed and Fussell had requested ground level work at the time. Therefore, a triable issue of material fact exists as to whether Timec offered Fussell a reasonable

17

accommodation.[11]  (*Bell v. Wells Fargo Bank* (1999) 62 Cal.App.4th 1382, 1389, fn. 6.)

***Fussell's Claims Are Not Barred by Worker's Compensation Exclusivity.[12]***

Subdivision (a) of Labor Code section 3600 provides that, subject to certain further specified exceptions and conditions, workers' compensation liability, "in lieu of any other liability whatsoever[,]" will exist against an employer for any injury sustained by its employees arising out of and in the course of their employment.  As relevant, the statute specifies:  "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence exist against an employer for any injury sustained by [its] employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur . . . ."  (Lab. Code, § 3600, subd. (a).)  The conditions of compensation applicable here include:  "(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.  [¶]  (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.  [¶]  (3) Where the injury is proximately caused by the employment, either with or without negligence."  (*Ibid.*)

Subdivision (a) of Labor Code section 3602 then provides:  "Where the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is . . . the sole and exclusive remedy of the employee . . . against the employer. . . ."  Proceedings "[f]or the recovery of compensation, or concerning any right or liability

---

[11]      Because we find triable issues of material fact exist and therefore preclude summary adjudication of Fussell's failure to accommodate claim, we need not address the issue of whether Timec failed to engage in the interactive process.

[12]      Although Timec only sought summary adjudication of Fussell's failure to accommodate cause of action on this ground, the trial court identified workers' compensation exclusivity in its order granting summary judgment.  In any case, the same reasoning applies to both of Fussell's claims against Timec.

18

arising out of or incidental thereto" shall be "instituted before the [workers' compensation] appeals board and not elsewhere, except as otherwise provided in Division 4 . . . ." (Lab. Code, § 5300, subd. (a).)

As the court in *Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679 (*Huffman*) noted: "The underlying purpose of these exclusivity provisions is the presumed "'compensation bargain.'" (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal. Rptr. 303, 801 P.2d 1054].) The bargain according to the *Shoemaker* court is that 'the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.]' (*Ibid.*)

"Certain types of injurious employer misconduct, however, remain outside the bargain. 'There are some instances in which, although the injury arose in the course of employment, the employer engaging in that conduct "'stepped out of [its] proper role[]'" or engaged in conduct of "'questionable relationship to the employment."' [Citations.]' (*Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 708 [30 Cal. Rptr. 2d 18, 872 P.2d 559].)" (*Huffman, supra,* 121 Cal.App.4th at pp. 693-694.)

"Employer actions that violate a fundamental public policy . . . are exempt from the exclusive remedy provisions of the [Worker's Compensation Act] WCA because they 'cannot under any reasonable viewpoint be considered a "normal part of the employment relationship."' (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1100 [4 Cal. Rptr. 2d 874, 824 P.2d 680], overruled on other grounds in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal. Rptr. 2d 16, 960 P.2d 1046]; see also *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1154–1155 [77 Cal. Rptr. 2d 445, 959 P.2d 752].)" (*Huffman, supra,* 121 Cal.App.4th at p. 695.) It is "well settled" that FEHA claims are exempt from the exclusivity provisions. (*Id.* at p. 695, fn. 7.)

In *Huffman,* as the jury had found the motive for the plaintiff's demotion was age

19

discrimination—taking it outside the scope of the compensation bargain—the issue for the court's determination was "the scope of the exclusive remedy provisions of the WCA when a subsequent workplace injury follows an allegedly unlawful demotion that is concededly outside the compensation bargain." (*Huffman, supra,* 121 Cal.App.4th at p. 695 & fn. 8.) The case presented a "new 'twist' in determining the scope of the exclusivity provision when two acts, one of which is exempt from the exclusivity provisions, might be the cause of the alleged injury." (*Id.* at p. 695.) As *Huffman* was the "first case to address this issue[,]" each of the parties proffered proposed tests for resolving the issue, but the court rejected both in favor of the "traditional tort 'substantial factor' test." (*Id.* at p. 696.)

"We conclude that the better approach to determine whether the exclusivity provisions apply to a subsequent injury following an unlawful act, such as a discriminatory demotion, is to determine whether the discriminatory conduct (i.e., the demotion) was a substantial factor in the subsequent industrial [knee] injury. We do not attempt to define the word 'substantial' but note that the conduct must have an effect in producing the injury or harm to regard it as a cause and that it must be more than slight, theoretical, trivial, or negligible to be a substantial factor.[] "'If the conduct which is claimed to have caused the injury had nothing at all to do with the injuries, it could not be said that the conduct was a factor, let alone a substantial factor, in the production of the injuries." [Citation.]' (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052 [1 Cal. Rptr. 2d 913, 819 P.2d 872].)" (*Huffman, supra*, 121 Cal.App.4th at p. 696, footnote omitted.) "In sum, we conclude that in order to be exempt from the exclusive remedy provisions of the WCA the unlawful act must be a substantial factor in the subsequent injury." (*Id.* at p. 698.)

Applying the substantial factor test to the facts in *Huffman* and emphasizing that the plaintiff (Huffman) had alleged and the jury believed the employer (IBC) unlawfully demoted Huffman because of his *age*, the court concluded the plaintiff's alleged unlawful demotion was not a substantial factor in his subsequent knee injury. (*Huffman, supra,* 121 Cal.App.4th at p. 698.) "*Had Huffman alleged a disability discrimination or failure-*

20

*to-accommodate claim,*" the *Huffman* court observed, "*there is no doubt*" his damages arising from his knee injury would have been *exempt from the exclusive remedy provisions.* (*Ibid.,* italics added.)

"*In such a case,* unlike the one presented, the *unlawful demotion to a position in which the employer knew the employee could not perform because of a physical disability would be a substantial factor in subsequent workplace injury* sustained by that employee while attempting to perform his or her job duties. *We emphasize that is not the situation here*. Huffman claimed, and the jury believed, that he had been demoted because of his age and replaced by a younger man. Although Huffman told [supervisors] Cooper and Laughlin that he could not meet the physical requirements of a division sales manager, he assumed that position and performed that job until the spring of 2000. Huffman then sought medical attention for his knee injury and in August 2000, he reported the injury to IBC. The injury Huffman sustained was because of the physical requirements of the job, which all division sales managers were required to perform, not because he was unlawfully replaced as a district manager by a younger man. Thus, IBC's decision to demote Huffman was unrelated to the subsequent injury and not a substantial factor in that injury." (*Id.* at p. 698, italics added.) Notably, Huffman's "discrimination claim was based on his age, *not on any physical disability* or inability to do the division sales manager job," and there was *no evidence his knee injury was related to his age*. (*Id.* at p. 699, italics added.) There was *no evidence* Huffman's duties or responsibilities were assigned for an unlawful purpose. (*Ibid.*) The *Huffman* court found that the theory Huffman proposed—that whenever a discriminatory act occurs, any subsequent work injury is exempt from workers' compensation exclusivity—would permit an employee to circumvent the workers' compensation system by asserting a discrimination claim "even if the injury was unrelated and remote in time to the discriminatory conduct." (*Huffman, supra,* 121 Cal.App.4th at p. 699.)

Unlike the facts actually presented in *Huffman* -- but under almost precisely the very circumstances contemplated as distinguishable by the *Huffman* court -- Fussell has

alleged both disability discrimination and failure to accommodate claims. Moreover, he has proffered evidence in support of his claim that Timec unlawfully discriminated against him and failed to accommodate his disability such that Timec placed him in a position in which it knew he could not perform because of his physical disability (for which he simply required his AFO to continue to work above ground). Consequently, in this case, for purposes of Timec's motion for summary adjudication, a triable issue of material fact exists as to whether Timec's failure to accommodate Fussell's disability was a substantial factor in causing his subsequent workplace injury. (*Huffman, supra,* 121 Cal.App.4th at p. 698 ["*Had Huffman alleged a disability discrimination or failure-to-accommodate claim,*" there is "*no doubt*" damages arising from his knee injury would have been *exempt* from the exclusive remedy provisions. *In such a case,* unlike the one presented, the unlawful demotion to a position in which the employer knew the employee could not perform because of a physical disability *would* be a substantial factor in subsequent workplace injury sustained by that employee while attempting to perform his or her job duties"].)

To the extent the trial court sidestepped the issues presented by concluding that summary judgment was properly granted on the issue of "causation"—based on evidence Fussell slipped on oil, we find the trial court erred. Any evidence Fussell slipped on oil is not "utterly irreconcilable" with Fussell's claims that Timec's failure to accommodate his disability and discrimination against him on the basis of that disability (by forcing him to work "up on the racks" or be terminated despite Timec's knowledge Fussell's AFO was broken and had not yet been repaired) was a substantial factor in causing his subsequent injury.[13] (*Bell v. Wells Fargo Bank, supra,* 62 Cal.App.4th at p. 1389; see also *Cole v. Town of Los Gatos* (2012) 205 Cal.App.4th 749, 769 [plaintiff may pursue theory of multiple causes of injury].) It follows that summary adjudication on this ground was

---

[13]    Indeed, Fussell testified his *left* leg – the leg on which he needed his AFO – was the leg that slipped on the scaffolding.

improper.  (*Huffman, supra,* 121 Cal.App.4th at p. 698; see also *Jones v. Los Angeles Community College Dist.* (1988) 198 Cal.App.3d 794, 809).

***Timec Was Not Entitled to Summary Adjudication of Fussell's Disability Discrimination Claim.***

Fussell argues Timec ignored the allegations of his complaint in framing its issues for summary adjudication, emphasizing in particular the discriminatory course of conduct he says he alleged to have occurred *before* he was terminated.  He says he was qualified to work as a pipefitter/fabricator despite his disability as the evidence established he was qualified and capable of working on the scaffolding as long as he wore his leg brace, and there were alternative duties he could have performed while he waited the few days needed for his AFO leg brace to be repaired.  "The fact that [his] subsequent back injuries occurred *due to* defendant Timec's discriminatory conduct should not excuse Timec from being held responsible under FEHA."  (Original italics.)

According to Timec, it was entitled to summary adjudication of Fussell's disability discrimination claim because it was undisputed that (1) "Fussell was *not qualified* to work as a Pipefitter/Fabricator at the time of his alleged termination and therefore cannot make a prima facie case of disability discrimination" and (2) "Fussell was laid off for legitimate nondiscriminatory reasons and there is no evidence of pretext."  (Italics added.)

*Basic Legal Principles.*

FEHA establishes separate causes of action for a range of "'unlawful employment practices,'" including disability discrimination (§ 12940, subd. (a)), retaliation (§ 12940, subd. (h)), failure to make reasonable accommodation for the known disability of an employee (§ 12940, subd. (m)) and failure to engage in the good faith interactive process to determine a reasonable accommodation (§ 12940, subd. (n)).  (See *Lui v. City and County of San Francisco* (2012) 211 Cal.App.4th 962, 970.)

Given "the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes. [Citation.]  In particular, California has adopted the three-stage burden-shifting test

23

established by the United States Supreme Court for trying claims of discrimination . . . ." (*Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 354 (*Guz*); *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159 (*Wills*).)

"This so-called *McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." (*Guz, supra*, 24 Cal.4th at p. 354.)

"In the first stage, the plaintiff bears the burden to establish a prima facie case of discrimination. (*Guz, supra*, 24 Cal.4th at p. 354.) The burden in this stage is "'not onerous'" (*id*. at p. 355), and the evidence necessary to satisfy it is minimal [citation]. On a disability discrimination claim, the prima facie case requires the plaintiff to show 'he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability.' (*Ibid*.)" (*Wills, supra*, 195 Cal.App.4th at p. 159.)

"If the plaintiff meets this burden, ""the burden shifts to the defendant to [articulate a] legitimate nondiscriminatory reason for its employment decision . . . .' . . ."" (*Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 342–343 [77 Cal. Rptr. 3d 654], original alteration (*Arteaga*).) This likewise is not an onerous burden (*Board of Trustees v. Sweeney* (1978) 439 U.S. 24, 25, fn. 2 [58 L. Ed. 2d 216, 99 S.Ct. 295]), and is generally met by presenting admissible evidence showing the defendant's reason for its employment decision (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1004 [93 Cal. Rptr. 3d 338] (*Scotch*)).

"Finally, if the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally discriminated against him or her. (*Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 142 [147 L. Ed. 2d 105, 120 S.Ct. 2097] (*Reeves*).) The plaintiff may satisfy this burden by proving the legitimate reasons offered by the

defendant were false, creating an inference that those reasons served as a pretext for discrimination. (*Ibid.*)" (*Wills*, *supra*, 195 Cal.App.4th at pp. 159-160.)

"A defendant's summary judgment motion "'slightly modifies the order of these [*McDonnell Douglas*] showings.'" (*Wills*, *supra*, 195 Cal.App.4th at p. 160, citation omitted.) On summary judgment (or adjudication), the defendant has the initial burden to either (1) negate an essential element of the plaintiff's prima facie case (*Arteaga, supra*, 163 Cal.App.4th at p. 344) or (2) establish a legitimate, nondiscriminatory reason for terminating the plaintiff (*Scotch*, *supra,* 173 Cal.App.4th at p. 1005). (*Wills, supra,* 195 Cal.App.4th at p. 160.)

Then, "'[T]o avoid summary judgment [once the employer makes the foregoing showing], an employee claiming discrimination must offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' [Citation.]" (*Wills, supra,* 195 Cal.App.4th at p. 160.)

*Qualified Employee Analysis.*

Citing *Green v. State of California* (2007) 42 Cal.4th 254, 262 (*Green*), Timec argues Fussell has acknowledged that he has been unable to perform the demands of his job as a pipefitter/fabricator since his injury on October 29, 2009, and therefore cannot establish that he was a qualified employee with a disability, a necessary element of his prima facie case. Timec says Fussell's argument that his inability to prove he was a qualified employee at the time of his termination should be excused given his disability was caused by Timec's conduct is not supported by any authority.

In *Green*, *supra,* 42 Cal.4th at page 262, in addressing a disability discrimination claim pursuant to subdivision (a) of section 12940, our Supreme Court determined that "in order to establish that a defendant employer has discriminated on the basis of

25

disability in violation of the FEHA, the plaintiff employee bears the burden of proving he or she was able to do the job, with or without reasonable accommodation."[14] Notably, the *Green* court observed that federal case law interpreting the Americans with Disabilities Act (ADA) is clear that the employee bears the burden of meeting the definition of "qualified individual with a disability." (*Id.* at p. 261.) "The reason is clear; it is not unlawful under federal law to draw a distinction on the basis of a disability *if that disability* renders an employee unqualified, with or without reasonable accommodation, to perform the essential functions of a position. (*Id.* at pp. 261-262.) Similarly, "[b]y its terms, section 12940 makes it clear that drawing distinctions on the basis of physical or mental disability is not forbidden discrimination *in itself*. Rather, drawing these distinctions is prohibited *only if* the adverse employment action occurs because of a disability and the disability would not prevent the employee from performing the essential duties of the job, at least not with reasonable accommodation." (*Id.* at p. 262.)

Applying the reasoning in *Green,* we reject Timec's argument that it should make no difference whether (if Fussell's account is believed) Timec *caused* the very disability that rendered him unqualified to work as a pipefitter/fabricator with or without reasonable accommodation. It is undisputed that, although he had "drop foot" as a result of an earlier injury (that caused his compartment syndrome), Fussell was able to perform his job duties at elevation as long as he wore his AFO leg brace to support and stabilize his left leg. Without the AFO, despite the fact he had "drop foot," he was still able to

---

[14] Government Code section 12940, subdivision (a) provides: "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: (a) *For an employer, because of* the race, religious creed, color, national origin, ancestry, *physical disability*, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or *to discharge the person from employment* or from a training program leading to employment, *or to discriminate against the person in compensation or in terms, conditions, or privileges of employment*." (Italics added.)

perform pipefitter/fabricator duties on the ground, and his repaired leg brace was expected to arrive within another day or so. Yet, if Fussell's evidence is credited, he was ordered to work up on the scaffolding or be fired. Under these circumstances, if he was rendered unqualified to perform his job duties, it was only because of Timec's prior failure to accommodate his disability (drop foot, simply requiring an AFO/leg brace) that led to an altogether different and perhaps permanent disability arising from the significant back injuries suffered in the October 29, 2009 fall.

In other words, we see no inconsistency with the *Green* decision in concluding that, when there is evidence that an employer—as a result of a prior FEHA violation (such as the failure to reasonably accommodate a known physical disability) *causes the very disability that renders the employee unqualified* to perform the essential duties of a particular job going forward, the defendant is not entitled to summary adjudication of a discrimination cause of action on the ground the plaintiff cannot establish status as a "qualified" employee. (*Green, supra,* 42 Cal.4th at pp. 261-262.)

Moreover, even without reaching the question of whether Fussell must establish he was a "qualified" employee to withstand summary adjudication of a discrimination claim within the meaning of subdivision (a) of section 12940, Fussell also argues that Timec failed to address all of the conduct Fussell alleged to be discriminatory in support of his first cause of action. "It is the allegations in the complaint to which the summary judgment motion must respond." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258; Code Civ. Proc., § 437c, subd. (b)(1), italics added [summary judgment or adjudication motion must show the "*material facts*" are undisputed].)

In support of his disability discrimination cause of action, Fussell specifically alleged Timec terminated him on the basis of his disability *and in retaliation for his request for accommodation because of that disability* and in retaliation for his stated intention to file a worker's compensation claim, in violation of the Fair Employment and Housing Act (FEHA, Gov. Code § 12940 et seq.), and to keep him from reporting his accident to Chevron. Further, in support of the *disability discrimination* claim (as distinguished from his failure to accommodate claim), he expressly stated Timec's

27

actions "in wrongfully terminating [him], *and otherwise discriminating against him, as alleged above*," were a substantial factor in causing his damages—including not only his financial and other such damages but also his potentially "*permanent disabilit*[*y*]" and related damages. (Italics added.) He reiterated in several paragraphs of his *disability discrimination* cause of action that, as a further direct and proximate result of the "aforesaid *acts of discrimination* [by Timec] on the basis of Fussell's physical disability," he had suffered various forms of damage further identified in his complaint. Similarly, he alleged he had filed a complaint with the Department of Fair Employment and Housing (DFEH) alleging he "had *suffered discrimination and was terminated, on the basis of his disability as described hereinabove, and was harassed and was denied an accommodation for his physical disability,* [*and was*] *retaliated* [*against*] *for requesting an accommodation*," and subsequently received a right-to-sue notice. (Italics added.)

In other words, while it is true Fussell specifically alleged discrimination on the basis of his physical disability arising out of his termination on November 2, 2009, he also expressly and repeatedly alleged Timec's actions *from October 29, 2009 forward*, demonstrated Timec had discriminated against him *and retaliated against him for requesting such accommodation*. Because Fussell also alleged he was terminated on November 2, 2009 in *retaliation* for requesting reasonable accommodation of his prior disability, Timec's assertion Fussell cannot present evidence he was "qualified" to work as a pipefitter/fabricator is irrelevant.

A plaintiff may pursue a disability discrimination claim based on *retaliation* as it is an unlawful employment practice for any employer "to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (h).) For a disability discrimination claim based on retaliation, a plaintiff need not establish status as a "qualified" employee. Instead, a discrimination claim based on retaliation requires proof that the plaintiff believed he or she suffered discrimination as a result of his or her physical disability by (1) engaging in protected activity by opposing discrimination and seeking a reasonable

28

accommodation, (2) he or she was subjected to adverse employment action and (3) a causal link existed between the protected activity and the employer's action.[15] (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042-1043.) Timec did not even attempt to address Fussell's allegations of discrimination based on retaliation for requesting reasonable accommodation and therefore did not meet its initial burden of proof in this regard. (Code Civ. Proc., § 437c, subd. (p)(2).)

Timec also argued it was entitled to summary adjudication because the evidence was undisputed that Fussell was laid off for a legitimate nondiscriminatory reason and there is no evidence of pretext. However, as Fussell argues, Timec misconstrues the record. Leaving to one side the question of whether Fussell was laid off or terminated as unnecessary for purposes of this discussion, Timec relies on the argument that, for example, in completing the form in which an inaccurate reason was cited for Fussell's termination, his supervisor (Tracy Shirley) "appears" to have "simply misunderstood" the coding—a claim which is plainly only one possible construction of the evidence— especially given the fact Shirley also specifically wrote out the words "Job Complete." Fussell presented evidence that Shirley seemed to have a negative "attitude" when he ordered Fussell "up on the racks" (after allowing him to work on the ground earlier) despite the knowledge his AFO leg brace was not yet repaired; he presented evidence that Glass had told him no one was working on November 1 but later learned his crew did work that day; that he was pressured to sign a form indicating his job had been completed when it had not; and that Savoy told him he never would have been working for Timec had Savoy known of his disability. If Fussell's version of events is believed, despite Fussell's requests, Timec refused to reasonably accommodate his disability (which did not prevent him from working as a pipefitter/fabricator) and then terminated him for

---

[15] Indeed, the almost immediate succession of events given the proximity of Fussell's request for a reasonable accommodation to the injury he suffered and his termination further bolsters his claim. (See *Parki v. Kaiser Permanente Hosp. Inc.* (9th Cir. 2004) 389 F.3d 840, 850; *Shellenberger v. Summit Bancorp* (3d Cir. 2003) 318 F.3d 183, 189.)

29

requesting reasonable accommodation and/or for becoming so significantly disabled that he may no longer be qualified to perform the same job duties as before—*as a direct result of Timec's failure to reasonably accommodate his prior disability.*[16] It follows that Timec was not entitled to summary adjudication of this cause of action as a matter of law.

## *DISPOSITION*

The judgment and order granting summary judgment are reversed. The matter is remanded to the trial court with instructions to enter a new order denying the motion for summary judgment or adjudication. Fussell is to recover his costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                    **SEGAL, J.**[*]

---

[16] According to the record, Fussell's AFO was ready on October 30—the day after his injury occurred. (See *A.M. v. Albertsons LLC* (2009) 178 Cal.App.4th 455, 465 ["a single failure to make reasonable accommodation can have tragic consequences for an employee who is not accommodated"].)

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.